JERRY E. SMITH, Circuit Judge:
 

 This appeal raises issues regarding federal court jurisdiction over a removed case and the doctrine of forum non conveniens. The district court concluded that it had jurisdiction, then dismissed pursuant to the doctrine of forum non conveniens. We conclude that, while the court had jurisdiction over this removed action, its analysis of the forum non conveniens issue was deficient. Accordingly, we vacate and remand.
 

 I.
 

 On December 20, 1987, approximately 5,000 citizens of the Philippines lost their lives in the collision of the M/Y DONA PAZ and the M/T VECTOR in the Tablas
 
 *1538
 
 Strait between Mindoro and Marinduque Islands in the Philippines. Defendants Cal-tex Petroleum, Inc., Caltex Petroleum Corporation, and Caltex Oil Corporation (the “defendants”), corporations with their principal place of business in Texas, were the charterers of the M/T VECTOR. The plaintiffs, representing four survivors and a large number of decedents, brought suit individually and as a class action (not yet certified) to recover compensation for the injuries and deaths.
 

 II.
 

 The suit was filed in state district court “pursuant to the laws of the United States, including the general maritime law, and, pursuant to the savings [sic] to suitor’s [sic] clause, 28 U.S.C. § 1333(1), as well as such other federal and state laws as may be applicable including § 17.031 of the Texas Civil Practice and Remedies Code.” On February 21, 1990, the defendants removed the matter to federal district court, asserting a right of removal under 28 U.S.C. § 1441(b) and claiming that the suit arises “under the admiralty and maritime jurisdiction of the [federal] court pursuant to 28 U.S.C. § 1333(1) and the Death on the High Seas Act [DOHSA], 46 U.S.C. § 761.”
 

 The defendants then answered and moved to dismiss on the basis of, among other grounds, forum non conveniens. For various reasons that, according to the plaintiffs, are not relevant to this appeal, the plaintiffs failed to respond to the motion to dismiss. On April 10, 1990, the district court dismissed the case, deeming the motion unopposed and basing dismissal upon Fed.R.Civ.P. 12(b)(3) — improper venue.
 

 On April 16, 1990, the plaintiffs moved for new trial, reconsideration, and remand. They asserted that the district court had no subject matter jurisdiction because the case had been improperly removed, that dismissal cannot be based solely upon a failure to respond, and that venue was proper. The plaintiffs also asked the court to set aside its dismissal order as a matter of law or equity and to remand to state court.
 

 The defendants responded, not by supporting improper venue as a ground of dismissal, but by requesting the court to change the basis of its dismissal to forum non conveniens. Without affording plaintiffs an opportunity to reply, the court on June 15, 1990, entered its final order, declaring that the DOHSA and general maritime claims had been improperly removed; that the plaintiffs’ failure timely to respond to the motion to dismiss was not the basis for the dismissal; that improper venue is not a proper ground for dismissal in a removed case; and that the court had subject matter jurisdiction, despite the improper removal, since the case could have been filed originally in federal court. The court amended its order of April 10 to reflect forum non conveniens, rather than improper venue, as the reason for dismissal. The plaintiffs appeal from the order of June 15.
 

 III.
 

 We must determine, initially, whether the federal district court had jurisdiction over this removed action. If it did not have jurisdiction at the time it ruled on the question of forum non conveniens, we may not consider that issue and must direct the district court to remand the entire proceeding to state court.
 

 The plaintiffs assert, and the district court held in its order of June 15, that the matter was improperly removed. There is authority for that conclusion although, as we explain
 
 infra,
 
 we need not decide that specific issue.
 

 This action was filed in state court pursuant to the so-called “saving to suitors” clause of section 1333(1).
 
 [1]
 
 That provision has been construed to permit admiralty and maritime actions, otherwise exclusively within the jurisdiction of the federal district courts, to be brought in state court as well. 1 S. Friedell,
 
 Benedict on Admiralty
 
 § 122 (6th ed. 1991).
 

 
 *1539
 
 In the instant case there is no diversity of citizenship. In
 
 Alleman v. Bunge Corp.,
 
 756 F.2d 344, 345-46 (5th Cir.1984), we observed that where plaintiffs have exercised their “historic option” (quoting
 
 Romero v. International Terminal Operating Co.,
 
 358 U.S. 354, 371, 79 S.Ct. 468, 479, 3 L.Ed.2d 368 (1959)), to bring an action in state court under the saving to suitors clause, the matter cannot be removed in the absence of diversity. Although there had been some doubt as to whether DOHSA claims may be brought exclusively in the federal courts, the Supreme Court recently has stated that DOH-SA jurisdiction is concurrent,
 
 i.e.,
 
 that a DOHSA action can be brought in either state or federal court.
 
 See Offshore Logistics, Inc. v. Tallentire,
 
 477 U.S. 207, 225, 106 S.Ct. 2485, 2495-96, 91 L.Ed.2d 174 (1986).
 
 [2]
 

 Thus, we treat this action as one properly brought in state court under DOHSA. If it is removable, the non-preempted survival claims and any general maritime injury claims are removable pursuant to the federal district court’s pendent jurisdiction.
 
 Romero,
 
 358 U.S. at 380-81, 79 S.Ct. at 484-85;
 
 Snyder v. Whittaker Corp.,
 
 839 F.2d 1085, 1092 (5th Cir.1988). As we have stated, however, we need not decide whether the cause was removable, as the plaintiffs, in any event, have waived their right to seek a remand.
 
 [3]
 

 IV.
 

 Even if this matter was improperlj removed, the plaintiffs waived the opportunity to challenge the removal. That is because plaintiffs’ motion for remand was untimely under 28 U.S.C. § 1447(c).
 
 [4]
 
 The plaintiffs do not dispute that they failed, as required by section 1447(c), to file a motion to remand within thirty days after defendants filed their notice of removal. Hence, after the expiration of the thirty-day period set forth in section 1447(c), the district court properly retained jurisdiction, assuming that this is an action that originally could have been brought in federal court, an issue we examine in the next section.
 

 In their opening and reply briefs on appeal, the plaintiffs devote only one paragraph (in the reply brief) to the issue of waiver. They point out that that section applies only to motions to remand based upon “any defect in removal procedure.” They aver that they never have contended that there were any
 
 procedural
 
 defects in the removal in this case but that their objection was based solely upon a claimed lack of subject matter jurisdiction.
 

 The plaintiffs have confused improper removal (i.e., lack of removal jurisdiction) with lack of original subject matter jurisdiction. The former is waivable,
 
 see Grubbs v. General Elec. Credit Corp.,
 
 405 U.S. 699, 703, 92 S.Ct. 1344, 1348, 31
 
 *1540
 
 L.Ed.2d 612 (1972);
 
 Lirette v. N.L. Sperry Sun, Inc.,
 
 820 F.2d
 
 116, 117 (5th
 
 Cir.1987) (en banc); the latter is not,
 
 see Hensgens v. Deere & Co.,
 
 833 F.2d 1179, 1180 (5th Cir.1987);
 
 Giannakos v. M/V Bravo Trader,
 
 762 F.2d 1295, 1297 (5th Cir.1985) (per curiam).
 

 In this regard, section 1447(c) mentions original subject matter jurisdiction, rather than removal jurisdiction, in providing that “[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.” That phrase “refers to want of federal subject matter jurisdiction.” 1A J. Moore & B. Ringle,
 
 Moore’s Federal Practice
 
 11 0.169[1] at 675 (2d ed. 1990). When Congress has intended to refer to removal jurisdiction, it has distinguished that concept from the doctrine of original subject matter jurisdiction.
 
 See, e.g.,
 
 45 U.S.C. § 822(e) (“original and removal jurisdiction”). Moreover, this court has had little difficulty in distinguishing between removal jurisdiction, on the one hand, and original or subject matter jurisdiction, on the other hand.
 
 [5]
 

 More to the point, the plaintiffs misconstrue what is meant in section 1447(c) by the term “procedural defect." As used in that section, a “procedural” defect is any defect that does not go to the question of whether the case originally could have been brought in federal district court:
 

 The motion to remand must be made within 30 days after removal, if the objections are of a character that can be waived, such as formal and modal matters pertaining to the procedure for removal
 
 or the non-removability of a proceeding otherwise within federal jurisdiction.
 

 1A J. Moore & B. Ringle 110.168[4. — 1] at 644 (footnotes omitted, emphasis added). Professor Moore thus notes that section 1447(c) concerns “the following situations that may arise in a removed suit:
 
 the action is of a nonremovable character;
 
 or although within removal jurisdiction, defendant has not pursued the proper procedure in removing the suit.”
 
 Id.
 
 110.157[11. — 1] at 166 (emphasis added). The former type of defect is the one at issue here, as we assume
 
 arguendo
 
 that the instant DOHSA claim is non-removable.
 

 There are at least three cognizable combinations of state/federal jurisdictional defects in the context of a removed proceeding: (1) where the state court has jurisdiction but the federal court lacks original and removal jurisdiction; (2) where both state and federal courts have original jurisdiction but there is no federal removal jurisdiction; and (3) where both state and federal courts lack jurisdiction.
 
 Id.
 
 ¶ 0.169[1] at 676. Assuming improper removal, the instant case falls into the second category:
 

 In the second category, where the state court has jurisdiction of the action, the federal court has original jurisdiction of such an action, but removal of the suit at bar is not warranted, ... the objection to the action proceeding in the federal court
 
 is a modal and formal one.
 
 If timely taken, the action should be remanded; otherwise,
 
 the objection is waived, and the removed action may proceed.
 

 Id.
 
 at 678 (footnotes omitted, emphasis added).
 

 Thus, in summary, “an irregularity in removal is waivable and, if waived, a federal court has power to proceed with a removed case that is within its original jurisdiction but is not one subject to removal:...”
 
 Id.
 
 110.157 [11. — 4] at 173. “[Wjhere the case is actually ... within the scope of original jurisdiction ..., all matters concerning the removal of the case to the federal court are capable of waiver ”
 
 Id.
 
 at 175-76. Hence, the word “procedural” in section 1447(c) refers to any defect that does not involve the inability of the federal district court to entertain
 
 *1541
 
 the suit as a matter of its original subject matter jurisdiction.
 

 “Removal proceedings are in the nature of process to bring the parties before the United States court.”
 
 Mackay v. Uinta Dev. Co.,
 
 229 U.S. 173, 176, 33 S.Ct. 638, 639, 57 L.Ed. 1138 (1913). In
 
 Mackay,
 
 a matter was removed from state court, despite the fact that while the counterclaim exceeded the jurisdictional amount, the plaintiffs claim did not; consequently, the matter was not within the removal jurisdiction of the federal district court and thus was “irregularly removed.”
 
 Id.
 
 Nonetheless, the Court held that as neither party had objected to removal, the district court had subject matter jurisdiction .and could entertain the cause, as the counterclaim could have been brought as an original action in federal court in satisfaction of the jurisdictional-amount requirement. The “irregularity was waivable and neither it nor the method of getting the parties before the court operated to deprive it of the power to determine the cause.”
 
 Id.
 
 at 177, 33 S.Ct. at 639.
 

 For present purposes, the absence of removal jurisdiction in
 
 Mackay
 
 because of an insufficient amount in controversy is no different from the assumed nonremovability of a DOHSA claim. In both cases, the want of removal jurisdiction is for a reason that normally would be considered “substantive”: in
 
 Mackay,
 
 an insufficient amount in controversy
 
 [6]
 
 ; here, the nonre-movability of a claim brought pursuant to a particular substantive statute. Also in each, the federal district court would have had original jurisdiction if the action had been filed there in the first instance.
 

 The result here is the same as in
 
 Mac-kay,
 
 that is, that “removal proceedings are in the nature of process.” 1A J. Moore & B. Ringle,
 
 supra,
 
 ¶ 0.157[11. — 3] (2d ed. Supp.1990). Since “removal proceedings are in the nature of process to bring the parties before the [district] court,”
 
 Mac-kay,
 
 229 U.S. at 176, 33 S.Ct. at 639, it is a waivable defect that a cause is brought to that court by means of removal rather than by an original complaint. In either event, all that is involved is the process by which the court receives the action, not the subject matter of the claim itself. Thus, when section 1447(c) speaks of “any defect in removal procedure,” it includes within its reach the bringing of an action not within the court’s removal jurisdiction but that could have been brought originally in that court.
 

 We so treated the issue of waiver in
 
 Petty v. Ideco, Div. of Dresser Indus., Inc.,
 
 761 F.2d 1146 (5th Cir.1985). There, removal jurisdiction was wanting under 28 U.S.C. § 1441(b), as the defendant was a citizen of the forum state. We held that, as the plaintiff made no timely objection to removal and the cause could have been brought originally in the federal district court, the plaintiff waived any objection to removal. 761 F.2d at 1148 n. 1. In
 
 Petty,
 
 as arguably here, the matter came to the federal district court by means of a flawed
 
 process
 
 (i.e., by removal rather than by original petition). As in
 
 Petty,
 
 that procedural deficiency was waived. The result in both cases is that the district court had jurisdiction to entertain the action.
 
 [7]
 

 In a very recent case construing section 1447(c), we have defined “any defect in removal procedure” as “all non-jurisdiction
 
 *1542
 
 al defects existing at the time of removal.”
 
 In re Shell Oil Co. (“Shell
 
 /”), 932 F.2d 1518, 1521 (5th Cir.1991). Thus, we held in
 
 Shell I
 
 that by not moving to remand within thirty days, the plaintiffs waived a removal defect existing under 28 U.S.C. § 1441(b),
 
 to-wit,
 
 that two of the defendants were residents of the forum state. In a companion case, we now have held that “[a]s amended, § 1447(c) requires that motions for remand must be made within 30 days of removal,
 
 except in cases in which the court lacks subject matter jurisdiction.” In re Shell Oil Co. (“Shell II”),
 
 932 F.2d 1523, 1527 n. 6 (5th Cir.1991) (emphasis added). Hence, in the instant case, as shown by the reasoning of
 
 Shell I
 
 and
 
 Shell II,
 
 original subject matter jurisdiction is not waivable, but all other defects, including defects in removal jurisdiction, are fully subject to waiver under section 1447(c).
 
 [8]
 

 V.
 

 The foregoing discussion assumes that the instant cause could have been brought originally in federal district court. We now easily conclude that it could.
 

 In their principal brief, the plaintiffs never assert that this matter could not have been filed in federal court. They seem to assume that it could have been, and they concentrate their attention on the assertion that this DOHSA claim was not
 

 subject to removal. Buried in a short footnote in the plaintiffs’ reply brief there finally appears the contention that “[bjased upon the plaintiffs’ pleading, this was not a case which ‘could have’ been filed in federal court.”
 
 [9]
 

 It is beyond doubt that although the parties can waive defects in removal, they cannot waive the requirement of original subject matter jurisdiction — in other words, they cannot confer jurisdiction where Congress has not granted it. “Since the district court had no original jurisdiction over this case ..., a finding that removal was improper deprives that court of subject matter jurisdiction and obliges a remand under the terms of § 1447(c).”
 
 International Primate Protection League v. Administrators of Tulane Educ. Fund,
 
 1991 WL 79118 at p. *9, 1991 U.S. LEXIS 2781 at *28 (U.S. May 20, 1991).
 
 Accord Hens-gens,
 
 833 F.2d at 1180;
 
 Giannakos,
 
 762 F.2d at 1297. Thus, once the plaintiff has waived the right to contest removal, “[t]he jurisdictional issue on appeal becomes whether the federal district court would have had jurisdiction over the case had it originally been filed in federal court.”
 
 Kidd v. Southwest Airlines Co.,
 
 891 F.2d 540, 546 (5th Cir.1990).
 

 There is no doubt that a DOHSA claim can be brought as an original matter in federal district court.
 
 Tallentire
 
 settled this question by holding that jurisdiction was concurrent but in no way questioned
 
 *1543
 
 the capacity of a federal district court to entertain a DOHSA claim filed there originally. When brought as an original suit in federal court, a DOHSA claim is, as the plaintiffs note, “within the
 
 admiralty
 
 jurisdiction.”
 
 Accord
 
 T. Schoenbaum,
 
 Admiralty & Maritime Law
 
 § 7-2, at 238 (1987). This is the admiralty jurisdiction conferred by section 1333.
 

 There are special procedures for invoking the admiralty jurisdiction of a federal district court. They are explained helpfully in two cases cited to us by the plaintiffs,
 
 Bodden v. Osgood,
 
 879 F.2d 184 (5th Cir.1989), and
 
 Alleman.
 
 The specific procedures are imposed by Fed.R.Civ.P. 9(h).
 
 [10]
 

 That rule requires that in order to invoke a federal court’s admiralty jurisdiction
 
 where there exists an additional ground for federal jurisdiction,
 
 the plaintiff must identify the claim as one in admiralty to make it plain that he wishes to invoke that jurisdictional basis rather than some other. Thus, in
 
 Bodden,
 
 where there was diversity of citizenship and the plaintiff had given conflicting signals as to whether he wished to proceed in admiralty, we concluded that the cause must proceed as an action at law in diversity. 879 F.2d at 186. In
 
 Alleman,
 
 as in
 
 Bodden,
 
 the defendants removed on the basis of diversity. We held that as the plaintiffs had done nothing affirmative to invoke admiralty jurisdiction, the action was properly in federal court only on the basis of diversity jurisdiction and not admiralty. 756 F.2d at 345-46.
 

 The instant plaintiffs can take no comfort in
 
 Bodden
 
 or
 
 Alleman,
 
 however, as these cases are readily distinguishable from the matter before us. Citing only these two cases, the plaintiffs argue that “[t]he only way that this case ‘could have’ been filed in federal court, is
 
 if
 
 the plaintiffs had
 
 not
 
 invoked the ‘saving to suitors’ clause and
 
 if
 
 the plaintiffs
 
 had
 
 invoked admiralty jurisdiction under Fed.R.Civ.P. 9(h).” (Emphasis in original.) What the plaintiffs overlook, however, is that by the plain language of rule 9(h) they, having waived any objection to removal, are deemed to have invoked the district court’s admiralty jurisdiction. That is because here, unlike the circumstance in
 
 Bodden
 
 or
 
 Alleman,
 
 there is no alternative basis of original federal jurisdiction (such as diversity). Thus, there can be no confusion as to whether the plaintiffs desired “to prosecute their action in a common law court,”
 
 Alleman, id.
 
 at 345, i.e., on some jurisdictional basis other than admiralty.
 

 We so conclude because in federal court (and absent diversity of citizenship), a DOHSA claim can be brought only on the admiralty “side” of the docket.
 
 See generally
 
 2 S. Friedell, J. Geraghty, D. Williams & E. Flynn,
 
 Benedict on Admiralty
 
 § 81b at 7-6 through 7-12 (6th ed. 1990). The plaintiffs observe that “a DOHSA claim is within the
 
 admiralty
 
 jurisdiction of federal courts and does not fall within federal question jurisdiction” and that “[t]he statute itself [46 U.S.C. § 761] provides that DOHSA suits may be maintained ‘in the district courts of the United States,
 
 in ad-
 
 miralty_’” (Plaintiffs’ emphasis.)
 

 Rule 9(h) patently provides that “[i]f the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not.” By its very terms, then, the “identifying statement” requirement of rule 9(h) applies only to a claim “that is also within the jurisdiction of the district court on some other ground” than admiralty.
 
 “[UJnless the claim is cognizable only in admiralty,
 
 the special practice features for admiralty claims are not applicable.”
 
 Bodden,
 
 879 F.2d at 186 (emphasis added).
 

 As a consequence, these plaintiffs, having waived any objection to removal, are relegated to the admiralty jurisdiction of
 
 *1544
 
 the federal district court, as that is the only jurisdictional basis for a DOHSA claim in federal court, absent diversity or some other jurisdictional basis. To be sure, that is not the forum that these plaintiffs have chosen, but such is the grist of the waiver mill.
 

 In summary, this is an action that the plaintiffs
 
 could have brought
 
 in federal court, in admiralty. No special averment under rule 9(h) would have been required because, as a DOHSA claim, the action could have been brought only in admiralty, there being no diversity. The point is that had the plaintiffs so chosen, the federal district court would have had original subject matter jurisdiction over the claim. That is why, once any objection to removal was waived, the district court was able to retain jurisdiction.
 

 The plaintiffs answer that not only did they fail to invoke admiralty jurisdiction under rule 9(h), but they also affirmatively invoked state court jurisdiction by means of the saving to suitors clause. It' is certainly true that the plaintiffs had the option, which they exercised, to file in state court. It is no different from the option of many plaintiffs, in and out of the admiralty/maritime context, to select a forum. But that selection, as always, is subject to any right of a defendant to remove and to the possibility that the plaintiff may waive his right to the forum of his choice. And any such waiver carries with it the waiver of any rights or procedures peculiar to state court, such as,
 
 inter alia,
 
 the right to a jury or to special time limits or discovery procedures under state law and state procedural rules.
 
 [11]
 

 In their final effort to establish that this claim could not have been brought originally in federal district court, the plaintiffs call our attention to
 
 Armstrong v. Alabama Power Co.,
 
 667 F.2d 1385 (11th Cir.1982) (Thornberry, J., sitting by designation). In
 
 Armstrong,
 
 a maritime wrongful death action was brought in state court under the saving to suitors clause. A third party complaint against the United States was brought under the Suits in Admiralty Act, 46 U.S.C. § 741
 
 et seq.
 
 (1975), which provided for exclusive jurisdiction in federal court. Instead of moving to dismiss, the United States removed to federal court.
 

 The Eleventh Circuit affirmed the district court’s remand to state court, which was based upon the doctrine of derivative removal jurisdiction. That doctrine, since abolished by the addition of 28 U.S.C. § 1441(e) in 1986,
 
 [12]
 
 provided that a federal court cannot obtain, through removal, jurisdiction over a claim as to which the state court had no jurisdiction. In
 
 Armstrong
 
 the state court had no jurisdiction over the Suits in Admiralty Act claim; thus, the federal court could not inherit that action by removal.
 

 Here, by way of contrast, the plaintiffs fervently and accurately aver that the state
 
 *1545
 
 court had jurisdiction over their claim. Even if section 1441(e) had not been enacted, the rationale of
 
 Armstrong
 
 would not apply to the instant case.
 

 In summary, the district court properly had jurisdiction over the instant cause, once the right to contest removal was waived by the failure to raise that issue within thirty days under section 1447(c). The district court thus had jurisdiction to consider the question of forum non conve-niens. We address that issue now.
 

 VI.
 

 Plaintiffs argue that the district court failed to apply the required analytical rubric in reaching its forum non conveniens determination. We have observed the need for such a methodology: “While we recognize that the decision to grant or deny a motion to dismiss for forum non conveniens is within the discretion of the district court, it should be an exercise in structured discretion founded on a procedural framework guiding the district court’s decisionmaking process.”
 
 In re Air Crash Disaster Near New Orleans, La.,
 
 821 F.2d 1147, 1165 (5th Cir.1987) (en banc) (citations omitted),
 
 vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez,
 
 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (mem.),
 
 opinion reinstated on other grounds,
 
 883 F.2d 17 (5th Cir.1989) (en banc). In this case, plaintiffs specifically contend that the district court failed (1) to determine whether a foreign forum was available and adequate; (2) to balance public and private interest factors; (3) to impose appropriate conditions on the dismissal; and (4) to provide a meaningful framework for appellate review.
 

 We agree with the plaintiffs’ contentions. The district court incorrectly transformed its previous dismissal, based upon “improper venue,” into a dismissal based upon forum non conveniens, without further comment. The court, however, did address in its previous “improper venue” dismissal order some of the factors upon which it relied in its later forum non conveniens determination.
 

 The court considered the defendants’ motion to dismiss to be unopposed and apparently based its decision upon the factual allegations contained in the complaint and the motion to dismiss. Together these documents demonstrate (1) that the plaintiffs are citizens of the Philippines; (2) that the collision occurred in the Philippines; (3) that the vessels that collided operated in the waters of the Philippines; (4) that the defendants are foreign corporations with their principal place of business in Texas; and (5) that there are similar suits arising out of the same accident presently pending in the Philippines.
 
 [13]
 

 Nevertheless, the plaintiffs complain that even though the defendants had the burden of persuasion on this issue,
 
 see Air Crash, id.,
 
 they presented no affidavits and provided only unsworn allegations. The plaintiffs also insist that while there may have been other claims pending against the defendants in the Philippines, this fact alone is not determinative of the availability or adequacy of a foreign forum. The defendants argue that this indeed was enough, and, citing
 
 Piper Aircraft Co. v. Reyno,
 
 454 U.S. 235, 253-54, 102 S.Ct. 252, 264-65, 70 L.Ed.2d 419 (1981), maintain that it was not necessary to show that the remedies available in the Philippines are similar to those in the United States. Their argument, however, is unpersuasive.
 

 The plaintiffs are correct in their assertion that the defendants have failed to show that a foreign forum was available and adequate. Such “[a] foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum.”
 
 Air Crash,
 
 821 F.2d at 1165 (citing
 
 Syndicate 420 at Lloyd’s London v. Early Am. Ins. Co.,
 
 796 F.2d 821, 830 (5th Cir.1986)). And “[a] foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same bene
 
 *1546
 
 fits as they might receive in an American court.”
 
 Id.
 
 (citing
 
 Syndicate 420,
 
 796 F.2d at 829) (additional citation omitted). In
 
 Air Crash,
 
 we held “that a moving defendant need not submit overly detailed affidavits to carry its burden, but it ‘must provide enough information to enable the district court to balance the parties [sic] interests.’ ”
 
 [14]
 

 Id.
 
 at 1164-65 (quoting
 
 Piper,
 
 454 U.S. at 258, 102 S.Ct. at 267).
 

 By showing only that they were being sued in the Philippine courts by the relatives of the survivors of this maritime disaster, the defendants failed to provide sufficient information with which to support the required “procedural framework.” In fact, the defendants appear to have misread
 
 Piper,
 
 in which the Court required that the defendant, at a minimum, demonstrate that he is “amenable to process” in the other forum. 454 U.S. at 255 n. 22, 102 S.Ct. at 265 n. 22. Furthermore, the Court held that the mere fact that a foreign court has jurisdiction over claims relating to the same cause of action does not mean that that country’s law relating to the subject of the suit cannot change in the interim and thereby render the forum constructively unsuitable for presentation of the claim.
 
 Id.
 
 at 254-55, 102 S.Ct. at 265. Hence, as we have noted in
 
 Svendsen
 
 and in
 
 Nolan v. Boeing Co.,
 
 919 F.2d at 1068, in order to fulfill the requirements of
 
 Gulf Oil,
 
 a more detailed presentation must be made by the defendants concerning the private interest factors in order that the district court can address the six-factor test.
 
 [15]
 

 The plaintiffs’ second argument is that the district court did not adequately explicate the public or private interest factors. Defendants state, to the contrary, that the public factors mentioned in the record amply show that trying the case in Texas would be quite inconvenient for all parties and that the private interest factors discussed by the court demonstrate that the trial also would be a logistical nightmare.
 

 Indeed, defendants maintain that under similar facts, the court in
 
 In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India,
 
 809 F.2d 195 (2d Cir.),
 
 cert. denied,
 
 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987), reached the same conclusion after focusing upon the public and private interest factors. In that case, since the accident occurred in India, all the plaintiffs were citizens of India, and most of the witnesses lived in India,
 
 id.
 
 at 200-01, the court agreed with the district court and held that the best forum to hear the cause of action would be in that country.
 
 Id.
 
 at 206.
 

 The plaintiffs’ contention has merit. Once an adequate and available foreign forum is found to exist, the district court should consider all of the relevant private interest factors to determine each forum’s convenience to the parties.
 
 Air Crash,
 
 821 F.2d at 1164. If the private factors weigh in favor of dismissal, no further inquiry need be made.
 
 Id.
 
 at 1165. Indeed, only if the court cannot determine whether such private factors weigh in fa
 
 *1547
 
 vor of dismissal is it required to examine the public interest factors at all.
 
 Id.
 

 [16]
 

 In this instance, most of the factors that the court mentioned as the basis for its forum non conveniens determination are public interest factors that should not enter into its decision until after it resolves the six private interest factors. While the court cited in its order of dismissal that sources of proof and witnesses are located in the Philippines, it did not consider any other public or private interest factors, nor did it consider the benefits of having the case heard in Texas. The court simply described the nationalities of the parties, the place of the accident, the fact that other suits are pending against a Caltex party from this cause of action in the Philippines, and the fact that generally sources of proof and witnesses are located there. Such formulation does not provide us with an adequate opportunity to determine whether the district court attempted to satisfy the
 
 Gulf Oil
 
 standard by balancing the interests of the parties and by considering the relative convenience of the two forums.
 

 Next, the plaintiffs argue that the district court failed to impose any conditions on the dismissal and that this is contrary to
 
 Air Crash,
 
 in which we stated that a district court must “ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or preju-dice_” 821 F.2d at 1166. The defendants cite no contrary authority. Instead, they find a certain irony in citizens of the Philippines complaining that the dismissal failed to protect their right to sue in the courts of their home country.
 

 The defendants’ general argument overlooks many problems associated with “return jurisdiction” cases, such as statutes of limitations, political influences in the home state in favor of the opposing part, and obstruction of justice. While the district court is given the discretion to determine the conditions of dismissal or to determine that the dismissal should be unconditional under the circumstances,
 
 see Zekic v. Reading & Bates Drilling Co.,
 
 680 F.2d 1107, 1109 (5th Cir.1982),
 
 [17]
 

 Air Crash
 
 requires the courts to ensure that plaintiffs can reinstate suits in American courts if the defendants obstruct jurisdiction in the alternative forum. 821 F.2d at 1166.
 

 Thus, courts must take measures, as part of their dismissals in forum non conveniens cases, to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts. Such measures often include agreements between the parties to litigate in another forum, to submit to service of process in that jurisdiction, to waive the assertion of any limitations defenses, to agree to discovery, and to agree to the enforceability of the foreign judgment.
 
 See, e.g., Svendsen; Union Carbide,
 
 809 F.2d at 198.
 

 The district court failed to include any return jurisdiction clause in its order of dismissal. Although the defendants attempt to play down the importance of such a clause owing to the fact that the plaintiffs are residents of the alternate forum, this simplified analysis does not appear to satisfy the
 
 Air Crash
 
 test. While we assume that Caltex companies are defending a number of cases already in the Philippine courts, concerning this specific accident, plaintiffs would have no guarantee that the defendants will submit to the jurisdiction of the court in this instance or will waive any limitations defenses. The defendants, however, have mentioned in their briefs that they would be amenable to having the case remanded to the district court to place such conditions in the order of dismissal. While such conditions probably would not solve the
 
 Gulf Oil
 
 problems, they would enable
 
 *1548
 
 the plaintiffs to secure the opportunity to litigate their case in another forum.
 

 Finally, the plaintiffs insist that the district court failed to set out its findings and conclusions supporting the motion to dismiss for forum non conveniens and that this deficiency precludes meaningful appellate review. In
 
 Air Crash,
 
 we stated that “[i]f we are not supplied with either a written or oral explanation of the court’s decision we will not be reluctant to vacate the lower court’s judgment and remand because we do not perform a de novo resolution of forum non conveniens issues.” 821 F.2d at 1166 n. 32 (citing
 
 La Seguridad v. Transytur Line,
 
 707 F.2d 1304, 1308 (11th Cir.1983)).
 

 Thus, the district court has failed to follow this circuit’s analytical framework for dismissing a case on forum non conveniens grounds. It appears to have generalized, from a number of public interest factors, that these specific plaintiffs should have no problem in bringing their suit against the defendants in their home country, as some persons apparently have done. In so concluding, the court has not observed the procedural safeguards developed by the Supreme Court and by this court to guarantee that such litigants have a fair opportunity to litigate in the alternate forum and that if the defendants refuse to submit to such jurisdiction, the plaintiffs can litigate their claims in American courts.
 

 Accordingly, we remand so that the district court can begin afresh its forum non conveniens determination. In its discretion, it may wish to permit the parties to make additional submissions on this issue. We intimate no view as to what ultimate decision the court should make on the forum non conveniens issue, as this is a matter within the court’s discretion.
 

 The judgment of dismissal is VACATED, and this matter is REMANDED for further proceedings in accordance with this opinion.
 

 [1]
 

 . Section 1333(1) provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.”
 

 [2]
 

 . The Court held that DOHSA preempts state wrongful death statutes. 477 U.S. at 223, 106 S.Ct. at 2494. Subsequently, we have held that survival actions under general maritime law are not preempted by DOHSA.
 
 See Graham v. Milky Way Barge, Inc.,
 
 824 F.2d 376, 386-87 (5th Cir.1987) (on petition for rehearing).
 

 [3]
 

 . In support of their assertion that absent diversity, a DOHSA claim cannot be removed under the general federal question jurisdiction of 28 U.S.C. § 1331, the plaintiffs refer us to a scholarly opinion by Judge Hittner in
 
 Filho v. Pozos Int'l Drilling Servs., Inc.,
 
 662 F.Supp. 94 (S.D.Tex.1987). There, the court squarely held that "a claim pursuant to DOHSA fails to invoke federal question jurisdiction.”
 
 Id.
 
 at 100.
 

 Resourcefully, the plaintiffs also refer us to a treatise by,
 
 inter alia,
 
 one of defendants’ counsel asserting that "removal of a saving clause case probably should not be permitted when there is no diversity of citizenship between the litigants and removal is sought solely because jurisdiction would have existed under Section 1333
 
 if
 
 the case had been brought in the federal courts originally as an admiralty matter_” 14 C. Wright, A. Miller & E. Cooper,
 
 Federal Practice & Procedure
 
 § 3674, at 466 (2d ed. 1985) (emphasis in original). The defendants argue, however, that under
 
 Tallentire,
 
 477 U.S. at 222-29, 106 S.Ct. at 2494-98, DOHSA actions are not saving-to-suitors cases at all but that, instead, it is § 7 of DOHSA, 46 U.S.C. § 767, that confers concurrent state and federal jurisdiction over DOHSA cases.
 

 [4]
 

 .Section 1447(c) provides in relevant part that "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under [28 U.S.C.] § 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.”
 

 [5]
 

 .
 
 See, e.g., Nolan v. Boeing Co.,
 
 919 F.2d 1058, 1061 (5th Cir.1990);
 
 Ziegler v. Champion Mortgage Co.,
 
 913 F.2d 228, 230 (5th Cir.1990);
 
 Carrollton-Farmers Branch Indep. School Dist. v. Johnson & Cravens, 13911, Inc.,
 
 889 F.2d 571, 572 (5th Cir.1989) (per curiam) (on petition for rehearing).
 
 Accord
 
 1A J. Moore & B. Ringle,
 
 supra, ¶ 0.157[11.
 
 — 4] at 174 ("original and removal jurisdiction”).
 

 [6]
 

 . "[A] jurisdictional amount requirement goes to subject matter jurisdiction and lack of it cannot be waived_’’ 1A J. Moore & B. Rin-gle,
 
 supra,
 
 ¶ 0.157 [11. — 4] at 174.
 

 [7]
 

 . The plaintiffs argue, at length, the inapplicability of
 
 Grubbs v. Gen. Elec. Credit Corp.,
 
 which states that "where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue ... is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." 405 U.S. at 702, 92 S.Ct. at 1347. We need not decide whether the rationale of
 
 Grubbs
 
 applies to the instant case because, in any event, the 30-day limit was added to § 1447(c) in 1988 and thus supersedes
 
 Grubbs
 
 in any case in which the plaintiff has not sought remand within the new time limit.
 
 See
 
 Judicial Improvements & Access to Justice Act, Pub.L. No. 100-702, § 1016(c)(1), 1988 U.S.Code Cong. & Admin.News (100 Stat.) 4642, 4670. “Prior to the 1988 amendment to § 1447(c), there was no fixed time limit within which the plaintiff was required to move for a remand." 1A J. Moore & B. Ringle,
 
 supra,
 
 ¶0.157[11.—5] at 180.
 

 [8]
 

 . We note that the court in
 
 Shell I,
 
 at 1522, thoroughly examined the legislative record regarding the 1988 amendments to § 1447(c) and observed that the relevant congressional report explained that remand must be sought within 30 days "on any ground other than lack of subject matter jurisdiction." H.R.Rep. No. 889, 100th Cong., 2d Sess. 72 ("House Report”),
 
 reprinted in
 
 1988 U.S.Code Cong. & Admin.News 5982, 6033. The House Report also explains.
 

 So long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between two courts that each have subject matter jurisdiction. There is also some risk that a party who is aware of a defect in removal procedure may hold the defect in reserve as a means of forum shopping if the litigation should take an unfavorable turn.... The amendment is written in terms of a defect in ‘removal procedure’ in order to avoid any implication that remand is unavailable after disposition of all federal questions leaves only State law questions that might be decided as a matter of ancillary or pendent jurisdiction or that instead might be remanded.
 

 House Report at 72, 1988 U.S.Code Cong. & Admin.News at 6033.
 

 [9]
 

 . Customarily we decline even to consider arguments raised for the first time in a reply brief. E.g.,
 
 Najarro v. First Fed. Sav. & Loan,
 
 918 F.2d 513, 516 (5th Cir.1990);
 
 United States v. Clinical Leasing Serv., Inc.,
 
 930 F.2d 394, 395 n. 1 (5th Cir.1991) (on petition for rehearing);
 
 Peteet v. Dow Chem. Co.,
 
 868 F.2d 1428, 1437 (5th Cir.1989) (citing cases);
 
 United States v. Prince,
 
 868 F.2d 1379, 1386 (5th Cir.1989).
 

 [10]
 

 . Rule 9(h) reads in relevant part as follows:
 

 Admiralty and Maritime Claims. A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not.
 

 [11]
 

 . In a post-argument brief filed by leave of court, the plaintiffs contend for the first time that the defendants never raised the issue of waiver in the district court and hence cannot urge waiver for the first time on appeal. The defendants respond that they did raise waiver in their opposition to plaintiffs’ motion for new trial, reconsideration, and remand. They also note that recently in
 
 Masinter v. Tenneco Oil Co.,
 
 867 F.2d 892 (5th Cir.1989), the defendant asserted a new defensive theory shortly before oral argument. We held that "[wjhen the judgment of the district court is correct, it may be affirmed on appeal for reasons other than those asserted or relied on below.”
 
 Id.
 
 at 896 (citing
 
 Terrell v. University of Tex. Sys. Police,
 
 792 F.2d 1360, 1362 n. 3 (5th Cir.1986),
 
 cert. denied,
 
 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987)).
 

 We also observe that the plaintiffs appear to have waited too long to assert that defendants cannot now raise the waiver issue. "In the absence of manifest injustice, this court will not consider arguments belatedly raised after appellees have filed their brief.”
 
 Najarro v. First Fed. Savs. & Loan,
 
 918 F.2d at 516. In
 
 Najarro,
 
 the "belated” argument appeared for the first time in appellants’ reply brief; here, it is raised for the first time after oral argument. In a manner of speaking, plaintiffs have
 
 waived
 
 the right to argue that defendants have
 
 waived
 
 their
 
 waiver
 
 argument.
 
 See supra
 
 note 9.
 

 [12]
 

 .
 
 See
 
 Judicial Improvements Act of 1985, Pub.L. No. 99-336, § 3(a), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 633, 637. Section 1441(e) provides that ”[t]he court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."
 

 [13]
 

 . Apparently, the federal district courts have entertained at least one suit against Caltex regarding this collision.
 
 See Carreon v. Caltex Philippines,
 
 No. 90-0931, 1990 WL 142029 (E.D.La. Sept. 25, 1990).
 

 [14]
 

 . In
 
 Air Crash
 
 we further stated that "the necessary detail [required by defendants] will depend upon the particular facts of each case.” 821 F.2d at 1165 n. 28. We observed that '“a motion to dismiss for forum non conveniens does not call for a detailed development of the entire case.’ ”
 
 Id.
 
 (quoting
 
 Fitzgerald v. Texaco, Inc.,
 
 521 F.2d 448, 451 n. 3 (2d Cir.1975),
 
 cert. denied,
 
 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976)). It should be noted, however, that we require a defendant to put forth unequivocal, substantiated evidence presented by affidavit testimony in order for the district court to satisfy the standard enunciated in
 
 Gulf Oil Corp. v. Gilbert,
 
 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).
 
 See Svendsen v. Pozos Int'l Drilling Co.,
 
 928 F.2d 401 (5th Cir.1991) (unpublished).
 

 [15]
 

 . In determining each forum’s convenience to the parties, the court must weigh the following private interest factors:
 

 relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; probability of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained.
 

 Air Crash,
 
 821 F.2d at 1162 (quoting
 
 Gulf Oil,
 
 330 U.S. at 508, 67 S.Ct. at 843).
 

 [16]
 

 . The public interest factors, as enumerated in
 
 Gulf Oil,
 
 include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the intent in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.”
 
 Id.
 
 at 1162-63 (citing
 
 Gulf Oil,
 
 330 U.S. at 508-09, 67 S.Ct. at 843).
 

 [17]
 

 .
 
 Zekic
 
 was overruled on other grounds by
 
 Air Crash.