**AMOCO OIL COMPANY**

**v.**

**PHILLIPE MARTIN & ASSOCIES and Colonia.**

**Civ. A. No. G–92–296.**

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 27, 1993.

James B. Galbraith, McLeod, Alexander, Powell & Apffel, Galveston, TX, for plaintiff.

Harold K. Watson, Liddell, Sapp, Zivley, Hill & LaBoon, Houston, TX, for defendant.

## ORDER

KENT, District Judge.

Before the Court is the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, and, Alternatively, to Dismiss for Forum Non Conveniens. For the reasons set forth below, the Court DENIES the Motion to Dismiss for Lack of Personal Jurisdiction and GRANTS the Motion to Dismiss for Forum Non Conveniens.

Facts

Amoco Oil Company ("Amoco") sold 200,-000 barrels of naphtha to AOT and Astra Oil Company ("Astra"), which in turn sold the cargo to ICI Chemicals & Polymers Ltd. ("ICI"). As part of the contract between AOT, Astra, and ICI, AOT and Astra agreed to insure the naphtha during its shipment from Amoco's shore tank in Texas City to ICI's shore tank in Teeside, England. To that end, AOT and Astra issued to "Bearer" a certificate that triggered coverage of the shipment under an open cargo policy that AOT and Astra maintained with a group of primarily Belgian and French underwriters.

Although the naphtha was inspected before shipment and found to be within the contractually stipulated range of quality, i.e.: less than 25ppm of MTBE, tests in Teeside revealed that the cargo's MTBE level greatly exceeded this limit. Inspec-

tors later determined that the naphtha was contaminated by the shore lines at Amoco's Texas City facility. ICI and Amoco subsequently entered a settlement agreement in which Amoco compensated ICI for its loss and ICI assigned to Amoco its right to coverage under the open cargo certificate.

As assignee, Amoco demanded reimbursement from Colonia, the lead underwriter of the group of underwriters that issued the open cargo policy to AOT and Astra. When Colonia refused to honor the claim, Amoco filed this suit against Colonia and Phillipe Martin & Associes, the French representative of the underwriters. Subsequent to the initiation of this action, Colonia served a Writ for negative declaratory relief as to its liability to Amoco in the High Court of Justice, Queen's Bench Division, Commercial Court.

Personal Jurisdiction

■ In the action before this Court, the Defendants claim that this Court lacks personal jurisdiction over the defendants. Two conditions must be met before a federal court can exercise jurisdiction over a non-resident defendant: (1) the long arm statute of the state in which the court resides authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal constitutional guarantees. *Rittenhouse v. Mabry,* 832 F.2d 1380, 1383–84 (5th Cir.1987). Because the Texas long arm statute extends to the limit permitted by the due process clause, *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990), this determination necessarily only involves a determination of whether the exercise of jurisdiction is constitutional. *See Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984); *Rittenhouse,* 832 F.2d at 1384.

■ To satisfy federal due process, a plaintiff must demonstrate that the defendant has established minimum contacts with the forum state and that the assertion of jurisdiction will comply with fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Hall,* 466 U.S. at 414, 104 S.Ct. at 1872;

*International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the minimum contacts analysis, a court must determine "whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183. Although not an independent component of minimum contacts analysis, the concept of foreseeability is implicit in the requirement that there be a substantial connection between Texas and the nonresident defendant arising from the conduct purposefully directed by the defendant toward this state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Foreseeability takes on added significance when the non-resident defendant is an insurance company. *See Rossman v. State Farm Mutual Auto. Insurance Co.,* 832 F.2d 282, 286–87 (4th Cir.1987); *Eli Lilly & Co. v. Home Insurance Co.,* 794 F.2d 710, 720–21 (D.C.Cir.1986), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990, 991 (1987); *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 628 F.2d 652, 668–70 (1st Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350–67 L.Ed.2d 336 (1981).

■ In this case, the Court concludes that the Defendants did foresee the possibility that vessels that it insured would enter not only American territorial waters, but also waters within the Southern District of Texas. When Colonia and Phillipe Martin & Associes sold the open cargo policy to AOT and Astra, they certainly knew that those companies would issue certificates to vessels that sojourned to the United States. Further, in light of the overwhelming presence that the Ports of Houston and Galveston possess in this country's international trade, the Defendants also could have foreseen that these ships would come within reach of this state's long arm. The Defendant's claims to the contrary have a particularly hollow ring in light of the fact that Section 8.30 of the open cargo policy nominates Allegheny Marine Servic-

es, Inc., as the inspectors for the state of Texas. This fact alone demonstrates the Defendants' knowledge that ships which they insured would sail to Texas.

The Court takes guidance in this case from *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni, supra.* In that case the First Circuit upheld the district court's determination that the Commonwealth of Puerto Rico possessed jurisdiction over a European insurance company. One of the significant determining factors was the fact that the European company had nominated a local law firm to provide "services" to insured ships that called on Puerto Rico. *Commonwealth of Puerto Rico*, 628 F.2d at 667–68. The First Circuit stated:

> While (the European company) was not engaged in selling insurance in Puerto Rico, its retention of the … law firm to perform services for insured owners and vessels in Puerto Rico demonstrates that (the European company) plainly expected its worldwide business of insuring maritime risks to embrace the territorial waters of Puerto Rico with some regularity.

*Id.* at 668. The Court finds the similarity between the fact pattern in *Commonwealth of Puerto Rico* and the fact pattern in this case to be striking.

■ Having determined that the Defendants have minimum contacts with this state, the Court must decide whether the exercise of jurisdiction over these Defendants comports with fair play and substantial justice. The factors to be included in this analysis include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). However, when minimum contacts have been established, the exercise of jurisdiction will only rarely fail to coincide with fair play and substantial justice. *Burger King*, 471 U.S.

at 477–78, 105 S.Ct. at 2184–85. In fact, a defendant must present a compelling case that jurisdiction is unreasonable. *Id.* at 477, 105 S.Ct. at 2184.

Here, the Defendants fail to carry this burden. Of the factors listed above that relate to this action, the Defendants can point to no facts that convince the Court that fair play and substantial justice compel the Court to refrain from exercising jurisdiction. Indeed, in the Court's view, the burden on the Defendants in trying a lawsuit here would not be overwhelming and this state's interest in adjudicating this dispute, i.e. resolving whether companies that do business in this state are entitled to insurance compensation, is rather significant.

Therefore, because the Court has determined that the Defendants have established minimum contacts with the state of Texas and that the exercise of jurisdiction does not conflict with fair play and substantial justice, the Court concludes that it does possess personal jurisdiction over the Defendants. Consequently, the Court DENIES the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

### Forum Non Conveniens

■ The second motion extant before the Court is the Defendants' Motion to Dismiss for Forum Non Conveniens. When analyzing a motion to dismiss for forum non conveniens, a district court must first determine whether an available and adequate foreign forum exists. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981); *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir.1987). "A foreign forum is available when the entire case and all parties are within the jurisdiction of that forum." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1549 (5th Cir.1991); *see also Syndicate 420 at Lloyd's London v. Early American Insurance Co.*, 796 F.2d 821, 830 (5th Cir.1986); *Pain v. United Technologies Corp.*, 637 F.2d 775, 784 (D.C.Cir. 1980).

■ In the instant case, there is no doubt that an alternate foreign forum is

available. All parties to this action are also parties to an action in Great Britain concerning these same events. Subsequent to the initiation of this suit, Colonia filed a Writ for negative declaratory judgment in the High Court of Justice, Queen's Bench Division, Commercial Court, in which Colonia seeks a determination that it is not liable to Amoco under the open cargo certificate. Furthermore, the open cargo policy contains a "London Suable" clause. This provision subjects the other forty-seven underwriters as well as the two Defendants in this case to the jurisdiction of the Commercial Court. Thus, given the fact that this Court is uncertain whether it possesses personal jurisdiction over the other underwriters, it is arguable that the British court is the *only* available forum, especially if it becomes necessary to add any additional defendants. Finally, the Court notes in passing that Mr. Justice Potter of the Commercial Court has already made a determination that the British Court is the most convenient place in which to try this case. While this Court is not bound in any way by that conclusion, it certainly is evidence that there is another forum available, and, indeed, that the action in that court is proceeding apace.

Aside from being available, this foreign forum is also a more than adequate forum in which to determine this controversy. "A foreign forum is adequate when the parties are not deprived of all remedies or treated unfairly, *Reyno,* 454 U.S. at 255, 102 S.Ct. at 265, even though they may not enjoy the same benefits as they might receive in an American court." *In re Air Crash Disaster,* 821 F.2d at 1165; *see also Baris,* 932 F.2d at 1549; *Syndicate 420,* 796 F.2d at 829.

The Commercial Courts of London are located in the very heart of the international marine insurance center. Few, if any, tribunals worldwide have more experience than these courts in the adjudication of marine insurance disputes. Indeed, this Court cannot think of any forum better qualified to resolve this lawsuit. Furthermore, the basic remedy sought by Amoco, coverage under the open cargo certificate, is clearly available to Amoco from the British court, since the insurance policy itself designates that court as the correct forum for the settlement of coverage disagreements. While Amoco will undoubtedly be deprived of some theories of recovery under which it seeks relief—this Court is particularly uncertain how sympathetic the Commercial Court will be towards Amoco's assertion of bad faith and maliciousness and consequent request for $10,000,000.00 in punitive and exemplary damages—the focus of the Court's examination here is whether *all* remedies are foreclosed in the alternate foreign forum. Clearly, in this case they are not.

Having decided that there exists an available and adequate foreign forum, a district court's second task is to examine several private and public interest factors which the Supreme Court has stated should be considered and balanced when faced with a motion of this type. *In re Air Crash Disaster,* 821 F.2d at 1162. In performing this balancing, the district court must bear in mind that "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. American Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947).

The Supreme Court outlined the private and public interest factors in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The private interest factors are:

1) relative ease of access to sources of proof;

2) availability of compulsory process for the attendance of unwilling witnesses;

3) cost of obtaining attendance of witnesses;

4) probability of view of premises where accident occurred, if appropriate;

5) enforceability of a judgment if one is obtained; and

6) other practical problems that make trial easy, expeditious and inexpensive.

The public interest factors are:

1) administrative difficulties flowing from court congestion;

2) local interest in having localized controversies resolved at home;

3) the forum's familiarity with the law that governs the action;

4) avoidance of unnecessary problems with conflicts of law, or in the application of foreign law; and

5) unfairness of burdening citizens in an unrelated forum with jury duty.

"If the private interest factors weigh in favor of dismissal, no further inquiry need be made.... [O]nly if the court cannot determine whether such private interest factors weigh in favor of dismissal is it required to examine the public interest factors at all." *Baris*, 932 F.2d at 1550–51 (citations omitted).

### 1. Access to Proof.

The Court feels that this factor points to the British court as the more convenient forum. Amoco and the Defendants putatively disagree over where the focus of this dispute will be—Amoco pointing to where the naphtha was loaded, the Amoco facility in Texas City, Texas, and the Defendants pointing to where the naphtha was unloaded, ICI's facility in Teeside, England. Consequently, both sides refer to hordes of witnesses and heaps of documents on both sides of the Atlantic as demonstration of the need to try this case in either of the two competing fora. However, the Court's realistic evaluation of this case is similar to the one reached by Mr. Justice Potter of the Commercial Court in his consideration of this issue—there is little likelihood that there will be any dispute concerning the contamination of the naphtha. Counsel for the Plaintiff admitted in an affidavit to the Commercial Court, if not to responsibility, then at least to the fact that the contamination did take place at the Amoco facility. The true focus in this case, therefore, will concern the validity of Amoco's interest in the open cargo certificate and the appropriateness of Colonia's denial of coverage. The resolution of both of these issues is more convenient in London than in Galveston, particularly the latter, which will depend, the Court presumes, in large part upon the internal workings and claim-paying history of Colonia. Therefore, given the likely issues of this case, the Court concludes that the access to proof factor points to England. Indeed, if one forecloses the necessity of being close to Texas City as a reason for retaining this action, this case's primary tie to this forum is severed.

### 2. Availability of Compulsory Process.

This factor plays little role in the Court's determination. Since the Court has already determined that the question of how the naphtha was contaminated will probably not be an issue in this case, it is unlikely that the Court will have occasion to exercise its compulsory process over any witnesses. Similarly, considering the widely divergent residences of the parties and potential parties, the Court is uncertain if the British court's ability to compel the attendance of reluctant witnesses will significantly help it resolve this case either.

### 3. Cost of Obtaining the Attendance of Witnesses.

Like the last factor, the cost of obtaining the attendance of witnesses is not determinative here. Amoco is an Illinois company and the Defendants are European companies. Regardless of whether the parties try this case in Galveston or London, the costs will be exorbitant. Trying this case in Galveston will not measurably reduce the monetary burden borne by anyone.

### 4. Probability of Viewing Premises of the Accident.

For the reasons set forth above, the Court does not feel that there will be any reason that the trier of fact will need to see the premises where the accident occurred.

### 5. Enforceability of Judgment.

This factor is significant in the Court's determination. Even if Amoco prevails in this action, because of the manner in which the underwriters have distributed the risk of the open cargo policy, it appears that the Defendants are liable for, at most, only 1.95% of any judgment which Amoco might receive. In that the other underwriters are

not before the Court, and that the Court is uncertain as to whether it has jurisdiction over the other underwriters, enforcing a judgment in this Court in favor of Amoco could be manifestly problematic. Additionally, although the Court does possess jurisdiction over the Defendants, Colonia and Phillipe Martin & Associes have few, in any assets in this country which this Court could seize or attach should the Defendants become intractable in satisfying any contrary judgment. The British Court, on the other hand, presumably does not suffer from any of these handicaps. All of the underwriters are subject to the full weight of that court's power to enforce a judgment. Therefore, this Court concludes that the apparent ability of the British court to better enforce a judgment against the Defendants makes the British court a more convenient forum in which to try this suit.

In sum, the Court's evaluation and balancing of the private interest factors leads it to conclude that the most convenient forum for the resolution of this dispute is the High Court of Justice, Queen's Bench Division, Commercial Court in London, England. As indicated above, the Fifth Circuit has declared that this determination relieves the Court of the need to weigh the public interest factors. Nonetheless, the Court feels constrained to make the following comments regarding these factors.

First, the Court does have some apprehension that if it does not retain this case, congestion in the British court system will delay the resolution of the merits of the dispute for many years. Granted, the Court is not privy to any information that indicates that the courts in Great Britain are subject to the same type of paralysis that seems to have gripped many tribunals in this country. Nevertheless, this Court very likely can provide the parties with a trial date within nine to twelve months. The Court earnestly hopes that this case will find as rapid a conclusion in the British court.

Second, in other situations, this Court actively asserts its interest in having localized controversies resolved in this forum. In the instant case, however, despite the fact that the naphtha was contaminated in the Southern District of Texas, the Court does not feel an overwhelming obligation to resolve an insurance dispute between French and Belgian underwriters and an enormous, world-wide Illinois corporation. Moreover, the Court does not feel that the citizens of this District should bear the responsibility of providing a jury for this case, either.

Finally, the resolution of this case will involve the interpretation of a marine insurance contract grounded in English law. This Court is willing to defer to, and feels that the ends of justice are better served by, the greater experience that the London Commercial Courts possesses in this area.

Therefore, because the Court concludes that the access to the proof necessary for the resolution of this case is greater in London than in Galveston and because this Court may have some difficulty in enforcing a judgment in this case, the Court GRANTS the Defendant's Motion to Dismiss for Forum Non Conveniens.

Conclusion

The Court DENIES the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, but GRANTS the Motion to Dismiss for Forum Non Conveniens. Consequently, the Court DISMISSES the Plaintiff's suit WITHOUT PREJUDICE. The Court further ORDERS that the parties shall refrain from filing any more motions or pleadings in this matter, before this Court. ANY FURTHER RELIEF SHALL BE SOUGHT FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT. Costs incurred herein to date shall be borne by the parties incurring same.

IT IS SO ORDERED.

## FINAL JUDGMENT

For the reasons set forth in the Court's order denying the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and granting the Defendants' Motion to Dismiss for Forum Non Conveniens, the

Court DISMISSES this action WITHOUT PREJUDICE.

THIS IS A FINAL JUDGMENT.