**EXXON MOBIL CORPORATION,**
**Plaintiff,**

v.

**STARR INDEMNITY & LIABILITY INSURANCE COMPANY, et al.,**
**Defendants.**

**Civil Action No. H-15-1555**

United States District Court,
S.D. Texas, Houston Division.

Signed 12/21/2015

Michael Patrick Morris, Danny L. Van Winkle, Tekell Book Allen Morris LLP, Houston, TX, for Plaintiff.

Harold K. Watson, Chaffe McCall, L.L.P., Darin Lee Brooks, Brian Edward Waters, Gray Reed & McGraw, P.C., Brian Thomas Bagley, Bernie Maynard Parson LLP, Houston, TX, for Defendants.

## ORDER

DAVID HITTNER, United States District Judge

Pending before the Court is Exxon Mobil Corporation's Motion to Remand (Document No. 6). Having considered the motion, submissions, and applicable law, the Court determines the motion should be denied.

## I. BACKGROUND

This case arises out of a series of litigation over disputed insurance obligations to Plaintiff Exxon Mobil Corporation ("Exxon"). Savage Refinery Services, LLC ("Savage"), a non-party, contracted to provide services to Exxon (the "Savage Contract"). The Savage Contract purportedly required Savage to obtain insurance policies listing Exxon as an additional insured.

Savage held various insurance policies with Defendants Starr Indemnity & Liability Company ("Starr") and National Union Fire Insurance Company of Pittsburgh PA ("National Union"). Defendant The Insurance Company of the State of Pennsylvania ("ICSOP") issued Savage a workers' compensation policy.

On January 12, 2013, two Savage employees, Kevin Roberts ("Roberts") and Arturo Munoz ("Munoz"), were injured while servicing Exxon's Baytown Refinery. On January 16, 2013, the first lawsuit related to the underlying incident at the Baytown Refinery was filed by Roberts,[1] solely against Exxon, in the 165th District Court of Harris County, Texas ("Roberts Suit").[2] Exxon made demands on all of Savage's liability insurance carriers following the filing of the Roberts Suit. A series of litigation arising in both Texas state district court and the Southern District of Texas followed.

## A. The Roberts Suit in Texas State Court

On January 16, 2013, the Roberts Suit was filed in Texas state court. Roberts asserted claims for burn injuries arising from the January 12, 2013 Baytown Refinery incident. Exxon was the sole defendant named in the suit. Starr, National Union, and ICSOP were among the Savage liability coverage carriers on which Exxon made demands following the filing of the suit.

## B. ICSOP and Starr Lawsuits for Declaratory Relief in Federal Court

### 1. ICSOP Suit

On January 9, 2014, ICSOP filed *The Insurance Company of the State of Pennsylvania v. Exxon Mobil Corporation,* Civil Action No. H–14–00053 ("ICSOP Suit") in the Southern District of Texas seeking declaratory relief as to its obligations to Exxon, Roberts, and Munoz. Roberts and Munoz were dropped from the suit when ICSOP filed its amended complaint. The case was assigned to United States District Court Judge Atlas. Exxon moved to dismiss asserting the court lacked subject matter jurisdiction. On June 18, 2014, the Court denied the motion.[3] The Court found the Roberts Suit was not parallel litigation requiring abstention or dismissal, as Roberts was not a party to the ICSOP Suit and ICSOP was not a party to the Roberts Suit.[4]

### 2. Starr Suit

On March 21, 2014, Starr filed *Starr Indemnity & Liability Company v. Exxon Mobil Corporation,* Civil Action No. H–14–00725 ("Starr Suit") in the Southern District of Texas seeking declaratory relief as to its obligations to Exxon. The Starr Suit was also assigned to Judge Atlas. Exxon moved to dismiss asserting the court lacked subject matter jurisdiction. On June 18, 2014, the Court denied the mo-

---

1. At the time the instant motion to remand and replies were filed the record does not indicate that Munoz has filed a lawsuit pertaining to the injuries he sustained during the Baytown Refinery incident.

2. *Roberts v. Exxon Mobil Corporation,* Cause No.2013–03033.

3. *Memorandum and Order,* Civil Action No. H–14–00053, Document No. 28.

4. On March 24, 2014, Exxon filed a motion in the Roberts Suit seeking to add ICSOP as a Third–Party Defendant. On June 18, 2014, when the Court denied the motion to dismiss the ICSOP Suit, the record before the Court did not indicate whether leave to file the third-party action in the Roberts Suit had been granted. *Memorandum and Order,* Civil Action No. H–14–00053, Document No. 28 at 5 n.3.

tion.[5] The Court found that, although the Bayton Refinery incident occurred on land, because the bumbershoot policy[6] at issue provided liability coverage for both marine and non-marine risks, admiralty jurisdiction pursuant to 28 U.S.C. § 1333 existed.

### C. Exxon Files a Third Party Action against ICSOP in the Roberts Suit

On March 24, 2014, Exxon moved to add ICSOP as a third-party defendant in the Roberts Suit. On March 28, 2014, Roberts and Exxon entered into a settlement agreement.[7] After securing leave of the court in the Roberts Suit, Exxon filed a third-party action against ICSOP on April 10, 2014. The third-party action contended that ICSOP waived all workers' compensation subrogation rights.

### D. The Instant Lawsuit—Exxon Mobil Corporation v. Starr Indemnity & Liability Company, et al.

On April 23, 2014, Exxon filed the instant suit against Starr, National Union, and ICSOP in the 125th District Court of Harris County, Texas ("Instant Suit").[8] The original petition asserted claims for breach of contract against Starr and National Union, for breach of contract on the waiver of subrogation against ICSOP, and sought declaratory judgment against all

defendants. On April 25, 2014, the case was removed to the Southern District of Texas and assigned to Judge Atlas.[9]

On May 9, 2014, Exxon moved for remand asserting a lack of subject matter jurisdiction.[10] Exxon contended the bumbershoot policy at issue did not confer admiralty jurisdiction and the waiver of subrogation claim against ICSOP arose under Texas workers' compensation law precluding removal. The Court denied the motion to remand.[11] The Court found that the bumbershoot policy conferred admiralty jurisdiction and that Exxon's claims against ICSOP were based in contract and did not arise under workers' compensation law.

### E. Stays of Litigation and Remand Resulting from the Trahan Decision

On June 10, 2014, the Fifth Circuit issued Trahan v. Liberty Mutual Insurance Company, 571 Fed.Appx. 319 (5th Cir. 2014). Trahan held that a claim as to whether a workers' compensation insurance carrier waived contractual rights—such as the claim Exxon asserted against ICSOP as to subrogation—arises under Texas workers' compensation law and is not removable. Citing to Trahan, Exxon moved for reconsideration of the denial of

---

5. *Memorandum and Order,* Civil Action No. H–14–00725, Document No. 3.

6. "A 'bumbershoot' is '[a] marine insurance policy covering multiple liability coverages in excess of one or more different underlying policies (comparable to the Commercial Liability Umbrella covering liabilities on land).' " *The St. Paul Travelers Cos. v. Corn Island Shipyard, Inc.,* 495 F.3d 376, 379 n. 1 (7th Cir.2007) (quoting *Glossary of Marine Insurance and Shipping Terms,* 14 U.S.F. MAR. L.J. 305, 325 (2001–2002)).

7. *Defendant's Motion for Reconsideration of Denial of Motion to Dismiss,* Civil Action No. H–14–00053, Document No. 29, ¶ 3.

8. *Exxon Mobil Corporation v. Starr Indemnity & Liability Company, et al.,* Cause No. 2014–22667.

9. *Exxon Mobil Corporation v. Starr Indemnity & Liability Company, et al.,* Civil Action No. H–14–01147.

10. *Plaintiff's Motion for Remand,* Civil Action No. H–14–01147, Document No. 3.

11. *Memorandum and Order,* Civil Action No. H–14–01147, Document No. 12.

remand in the Instant Suit on July 11, 2014. On July 16, 2014, Exxon also moved for reconsideration of the denial of dismissal in the Starr Suit and ICSOP Suit.

The Instant Suit, Starr Suit, and ICSOP Suit were all pending before Judge Atlas.[12] The motions for reconsideration were granted in all three cases.[13] In the Instant Suit, the Court rejected the argument that the now non-removable claims against ICSOP should be severed, and remanded the entire case. In the Starr Suit and ICSOP Suit, the Court stayed and administratively closed the cases pending a final decision in the state court proceedings in the Instant Suit and Roberts Suit.

### F. Exxon's Motions for Summary Judgment against ICSOP

#### 1. The Instant Suit

On September 23, 2014, following remand to state court, Exxon moved for summary judgment against ICSOP in the Instant Suit.[14] The motion sought declaratory relief that ICSOP waived its subrogation rights as well as attorneys' fees and damages. On April 2, 2015, interlocutory summary judgment[15] was granted but only as to the declaratory relief that ICSOP waived its subrogation rights for claims by Roberts and Munoz.[16]

#### 2. The Roberts Suit

On April 15, 2015, an interlocutory order granted summary judgment against ICSOP in the Roberts Suit. The declaratory relief granted against ICSOP in the Roberts Suit was identical to the declaratory relief granted in the Instant Suit's interlocutory summary judgment.[17]

### G. Exxon's Third Amended Petition in the Instant Suit

On May 8, 2015, Exxon filed its third

---

**12.** Also pending before Judge Atlas at that time was the Roberts Suit. On June 12, 2014, after Exxon filed the third-party defendant action against ICSOP in the Roberts Suit, ICSOP removed the Roberts Suit. *Notice of Removal*, Civil Action No. H–14–01651, Document No. 1. Exxon moved to remand on July 3, 2014. *Defendant/Third-Party Plaintiff/Counter–Plaintiff's Motion to Remand*, Civil Action No. H–14–01651, Document No. 5. On August 20, 2014, Judge Atlas granted the motion to remand the Roberts Suit. *Memorandum and Order*, Civil Action No. H–14–01651, Document No. 22.

**13.** *Memorandum and Order*, Civil Action No. H–14–01147, Document No. 44 (Instant Suit, granted August 20, 2014); *Memorandum and Order*, Civil Action No. H–14–00053, Document No. 45 (ICSOP Suit, granted September 11, 2014); *Memorandum and Order*, Civil Action No. H–14–00725, Document No. 32 (Starr Suit, granted September 17, 2014).

**14.** *Notice of Removal*, Document No. 1, Exhibit B (*Docket*).

**15.** Under Texas law, "[a] summary judgment that fails to dispose expressly of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court; in the absence of an order of severance, the party against whom an interlocutory summary judgment has been rendered has his right of appeal when and not before such partial summary judgment is merged in a final judgment disposing of all parties and issues." *City of Beaumont v. Guillory*, 751 S.W.2d 491, 492 (Tex.1988).

**16.** *National Union's and ICSOP's Brief in Support of their Response to Exxon Mobil Corporation's Motion to Remand*, Document No. 17, Exhibit G (*Order Granting Motion for Summary Judgment of Exxon Mobil Corporation against the Insurance Company of the State of Pennsylvania*) [hereinafter *Instant Suit Interlocutory Summary Judgment*].

**17.** Compare *Instant Suit Interlocutory Summary Judgment*, *supra* note 14, with *National Union's and ICSOP's Brief in Support of their Response to Exxon Mobil Corporation's Motion to Remand*, Document No. 17, Exhibit H (*Third-Party Action*).

amended petition in the Instant Suit.[18] The third amended petition reasserted identical requests for declaratory relief—as to IC-SOP's waiver of subrogation rights—to the requests for declaratory relief granted in the Roberts Suit and Instant Suit interlocutory summary judgments.[19] In the background facts section, Exxon first asserted that ICSOP and National Union conspired to interfere with Exxon's contractual rights regarding waiver of subrogation rights for the workers' compensation claims.[20]

### H. Final Judgment against ICSOP in Roberts Suit

On May 11, 2015, an order of final judgment was entered in the Roberts Suit as to Exxon's claims against ICSOP, which were not part of the settlement between Exxon and Roberts.[21] The interlocutory grant of summary judgment was incorporated into the final judgment. Exxon's approval of the final judgment was noted in the order.[22]

### I. Removal of the Instant Suit

On June 4, 2015, following the May 11, 2015 entry of final judgment resolving the ICSOP claims in the Roberts Suit,[23] the Instant Suit was again removed to this Court.[24] On July 6, 2015, Exxon filed a motion to remand pursuant to 28 U.S.C. § 1447(c).[25] Exxon asserts the Court lacks subject matter jurisdiction for the following four reasons: (1) The bumbershoot policy does not confer admiralty jurisdiction; (2) the Savings to Suitors clause in 28 U.S.C. § 1333 precludes removal; (3) the case arises under Texas workers' compensation law precluding removal; and (4) removal was not timely. Starr, National Union, and ICSOP (together, "Defendants") contend that the Court has jurisdiction and removal was proper.

### II. STANDARD OF REVIEW

A defendant may remove a case to federal court if the federal court has subject matter jurisdiction to hear the original complaint. 28 U.S.C. § 1441(a). Federal courts have limited jurisdiction, so any doubts regarding whether federal jurisdiction is proper are resolved against federal jurisdiction. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Accordingly, the removing party bears the burden of establishing that a state court suit is removable to federal court. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir.1995).

---

18. *National Union's and ICSOP's Brief in Support of their Response to Exxon Mobil Corporation's Motion to Remand,* Document No. 17, Exhibit J (*Plaintiff's Third Amended Petition Original Petition*) [hereinafter *Third Amended Petition*].

19. *Third Amended Petition, supra* note 18, at 16.

20. *Third Amended Petition, supra* note 18, at 10.

21. *National Union's and ICSOP's Brief in Support of their Response to Exxon Mobil Corporation's Motion to Remand,* Document No. 17, Exhibit I (*Final Judgment*) [hereinafter *Final Judgment*].

22. *Final Judgment, supra* note 21, at 3.

23. The ICSOP claims in the Roberts Suit were appealed after the removal of the Instant Suit. *The Insurance Company of the State of Pennsylvania, Appellant v. Kevin Roberts and Exxon Mobil Corporation, Appellees,* Cause No. 01–15–00453–CV, is currently on appeal before the First Court of Appeals in Houston, Texas. *Exxon Mobil Corporation's Joint Reply to Defendants Responses to Exxon Mobil's Motion to Remand,* Document No. 21, ¶ 10.

24. *Notice of Removal,* Document 1.

25. *Exxon Mobil Corporation's Motion to Remand,* Document No. 6.

When evaluating a motion to remand, all factual allegations are considered in the light most favorable to the plaintiff, and any contested fact issues are resolved in the plaintiff's favor. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir.2005). Any doubts about the propriety of removal are to be resolved in favor of remand. *Acuna*, 200 F.3d at 339.

### III. LAW & ANALYSIS

#### A. Law of the Case Doctrine

 Defendants contend this case is governed by the law of the case doctrine and that Judge Atlas's previous rulings control on the issues Exxon raised in support of remand. Exxon contends law of the case doctrine is not applicable where there are no governing appellate rulings, and even if it were, application is discretionary. Law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The doctrine generally bars a court, when a case on remand to the district court or on a subsequent appeal, from reexamining an issue of fact or law previously decided on appeal. *Lindquist v. City of Pasadena*, 669 F.3d 225, 238–39 (5th Cir.2012). Law of the case doctrine is also applicable when a case is transferred so that a successor judge, while not barred from reconsidering the first judge's order, should not do so "merely because the later judge might have de-

cided matters differently." *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009).

Although this case reaches this Court following a tangled web of litigation, there has yet to be an appellate decision that would govern the case. However, there were prior rulings by a different federal district court judge when the case was removed in the first instance. As addressed below, disagreements emerged among the district courts on the issues raised—yet to be resolved by the Fifth Circuit—after the first removal's rulings and this Court finds it prudent to examine the issues raised afresh. Law of the case doctrine does not bar this Court from reaching legal conclusions independent from the prior rulings.

#### B. 28 U.S.C. § 1333 Admiralty Jurisdiction

Exxon initially contended the jurisdictional analysis should turn on whether the principal objective of the Savage Contract was maritime in nature.[26] In response, Defendants contend the insurance policies, not the Savage Contract, control and confer admiralty jurisdiction pursuant to 28 U.S.C. § 1333, even though the policies also provide for non-marine liabilities and the underlying incident occurred on land.[27] Exxon replied that the bumbershoot policy has no "salty flavor" and the jurisdictional analysis should not be controlled by the policy label alone.[28]

 There is not a definitive line between maritime and nonmaritime con-

---

**26.** *Plaintiff Exxon Mobil Corporation's Memorandum of Law in Support of Motion to Remand,* Document No. 7 at 7–8.

**27.** *National Union's and ICSOP's Brief in Support of their Response to Exxon Mobil Corporation's Motion to Remand,* Document No. 17 at 8–9.

**28.** *Exxon Mobil Corporation's Joint Reply to Response of Starr Indemnity & Liability Company, National Union Fire Insurance Company of Pittsburgh PA, and the Insurance Company of the State of Pennsylvania's Responses to Exxon Mobil Corporation's Motion to Remand,* Document No. 21, ¶ 12.

tracts. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). The touchstone for determining admiralty jurisdiction pursuant to 28 U.S.C. § 1333 is reference to maritime services in the contract and not whether a ship or vessel was actually involved in the dispute. *Id.* at 1, 24 (discussing "a maritime case about a trainwreck"). Inclusion of land-based coverage is not dispositive as to whether a bumbershoot policy is a marine contract that confers admiralty jurisdiction; instead, the analysis turns on whether the policy's conceptual focus is maritime commerce. *St. Paul Fire & Marine Ins. Co. v. Bd. of Com'rs of Port of New Orleans*, 418 Fed.Appx. 305, 308 (5th Cir.2011) (holding the inclusion of fourteen vessels in a bumbershoot policy covering the dock conferred admiralty jurisdiction whereas a policy that only covered land-based operation of a dock would not).

The relevant contracts for determining admiralty jurisdiction are Starr's bumbershoot policy[29] and National Union's marine general liability policy[30] because Exxon has filed suit seeking coverage under those policies[31] and not the Savage Contract. Savage is not a party to this action. Exxon is not seeking an interpretation of whether Savage complied with the terms of the Savage Contract. This suit instead turns on the interpretation of the insur-

ance contracts for which Exxon asserts it is an additional insured.

 Maritime commerce is the touchstone of the policies at issue. Starr's bumbershoot policy provides coverage in excess of the following underlying insurance policies: (1) Marine General Liability/Terminal Operators Liability/Charterer's Legal Liability provided by National Union; (2) Savage Hull and Machinery; Protection & Indemnity provided by National Union; (3) GSS Hull and Machinery; Protection & Indemnity provided by National Union; (4) Savage Vessel Pollution provided by Great American Insurance Co; and (5) GSS Vessel Pollution provided by Water Quality Insurance Syndicate.[32] In addition to the marine general liability policy, the hull and machinery and protection and indemnity policies provide coverage for sixty-one separate vessels.[33] There is a sufficient focus on maritime vessels and marine liability in the policies underlying the bumbershoot policy for the Court to find the bumbershoot policy confers admiralty jurisdiction.

 National Union's general marine liability policy likewise has a sufficient touchstone with maritime commerce to confer admiralty jurisdiction. The policy includes coverage for the following general liability marine hazards: (1) terminal operator operations; (2) tankermans legal lia-

**29.** *National Union's and ICSOP's Brief in Support of their Response to Exxon Mobil Corporation's Motion to Remand*, Document No. 17, Exhibit A (*Policy No. MASILSE 00005012*) [hereinafter *Bumbershoot Policy*].

**30.** *National Union's and ICSOP's Brief in Support of their Response to Exxon Mobil Corporation's Motion to Remand*, Document No. 17, Exhibit B (*Policy No. 051769615*) [hereinafter *General Marine Liability Policy*].

**31.** *Third Amended Petition, supra* note 18, at 11 (listing policies Exxon seeks coverage under including Starr Policy No. MASILSE

00005012 and National Union Policy No. 051769615).

**32.** *Bumbershoot Policy, supra* note 29, at 14.

**33.** *Starr Indemnity & Liability Insurance Company's Summary of Argument in Support of Response to Motion to Remand*, Document No. 14, Exhibit C at 45–48 (*Savage Services Corporation Hull and Protection & Indemnity Marine Insurance Package*); Exhibit D at 13 (*Gulf Sulphur Services Hull and Protection & Indemnity Marine Insurance Package*); Exhibit E at 5–8 (*Ocean Marine Policy*).

bility; and (3) stevedores legal liability.[34] Accordingly, this Court finds that it has admiralty jurisdiction pursuant to 28 U.S.C. § 1333 because the contracts at issue are sufficiently focused on coverage for maritime commercial activity.

## C. Removability of General Maritime Claims

Exxon contends that, even if this Court finds the policies at issue confer jurisdiction under 28 U.S.C. § 1333, removal was precluded under 28 U.S.C. § 1441 and the Savings to Suitors clause in § 1333. As the Court finds the policies confer jurisdiction here pursuant to 28 U.S.C. § 1333, these assertions are addressed in turn.

### 1. 28 U.S.C. § 1441

The language of 28 U.S.C. § 1441 was changed in 2011. Exxon contends the 2011 language change in 28 U.S.C. § 1441(b) is merely a clarification. Thus, the new wording does not substantively change the previous interpretation of § 1441(b), which precluded removing admiralty cases brought in state court absent a separate and independent basis for federal jurisdiction. Defendants assert § 1441(b)'s new wording allows removal of general maritime claims without an independent basis for jurisdiction.

The district courts in the Fifth Circuit split as to the effect of the 2011 change to § 1441(b). Judge Miller, of the Southern District of Texas, first addressed the new language of § 1441(b) and found that gen-

eral maritime claims were now removable under a plain language analysis. *See Ryan v. Hercules Offshore, Inc.*, 945 F.Supp.2d 772 (S.D.Tex.2013) (Miller, J.). The courts addressing the issue immediately following *Ryan* adopted its reasoning, including this Court. *Murphy v. Seadrill Americas, Inc.*, Civil Action No. FI–14–1454 (S.D.Tex. Nov. 14, 2014) (Hittner, J.); *see also, e.g., Wells v. Abe's Boat Rentals Inc.*, Civil Action No. H–13–1112, 2013 WL 3110322 (S.D.Tex. June 18, 2013) (Rosenthal, J.); *Carrigan v. M/V AMC AMBASSADOR*, Civil Action No. H–13–03208, 2014 WL 358353 (S.D.Tex. Jan. 31, 2014) (Werlein, J.). When this case was first removed, Judge Atlas followed *Ryan* in finding that the maritime claims in this case were removable. *Exxon Mobil Corp. v. Starr Indem. & Liability Co.*, Civil Action No. H–14–1147, 2014 WL 2739309 at *2 (S.D.Tex. June 17, 2014) (Atlas, J.). However, other district courts subsequently split in interpreting the statute, with several district courts declining to follow *Ryan* and finding that § 1441(b) still precludes removal.[35]

This Court finds that the plain language of the statute controls and that general maritime claims are removable under the plain language of § 1441(b). Despite Exxon's contentions, the Fifth Circuit's holding in *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208 (5th Cir.2013), does not compel this Court to reach a different conclusion.[36] To the contrary,

---

**34.** *General Marine Liability Policy, supra* note 30, at 4.

**35.** *See, e.g., Mims v. Deepwater Horizon*, 90 F.Supp.3d 679 (S.D.Tex.2015) (Harmon, J.); *Clear Lake Marine Center, Inc. v. Leidolf*, Civil Action No. H–14–3567, 2015 WL 1876338 (S.D.Tex. April 22, 2015) (Lake, J.); *Rutherford v. Breathwite Marine Contractors, Ltd.*, 59 F.Supp.3d 809 (S.D.Tex.2014) (Gilmore, J.); *Parker v. U.S. Environmental Services, LLC,*

Civil Action No. G–14–292, 2014 WL 7338850 (S.D.Tex. Dec. 22, 2014) (Ellison, J.).

**36.** *Barker* was decided under the prior version of § 1441(b), but stated that the 2011 change to § 1441(b) change was a clarification rather than an amendment based on the legislative history. 713 F.3d at 223. Exxon contends given *Barker's* characterization of the 2011 change, this Court should not allow removal absent the Fifth Circuit overruling its prece-

whether the language change is characterized as a "clarification" or "amendment," the actual statutory language still controls. *See Swearingen v. Owens–Coming Fiberglass Corp.*, 968 F.2d 559, 562 (5th Cir. 1992) (stating "[i]f the meaning of a statute is clear and unambiguous extrinsic aids and rules of construction are inappropriate ... the statute should be given its common everyday meaning"). Here, the language of the statute is clear on its face.[37]

The Fifth Circuit interpreted the pre-2011 version of § 1441 to preclude removal of admiralty claims unless an independent basis from § 1333 existed for original jurisdiction. *See In re Dutile*, 935 F.2d 61, 62–63 (5th Cir.1991). Admiralty claims pursuant to § 1333 do not arise under the Constitution, laws or treaties of the United States. *See id.* at 63 (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 378, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959)). The pre–2011 version of 1441(a) allowed removal of any action over which a district court would have original jurisdiction "except as otherwise expressly provided by an Act of Congress." 28 U.S.C. § 1441(a) (2002). The pre–2011 version of § 1441(b) stated:

"Any civil action of which the district courts have original jurisdiction founded on a claim or right **under the Constitution, treaties or laws of the United States** shall be removable without regard to the citizenship or residence of the parties. **Any other such action** shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (2002) (emphasis added).

*Dutile* held that § 1441(b)'s "any other such action" governed admiralty claims as those claims do not arise under the "Con-

---

dent that precluded removal under the prior version of § 1441(b). Other than the *Barker* dicta, the Fifth Circuit has yet to interpret the 2011 version of § 1441(b).

**37.** Section 1441 currently reads, in relevant part:

(a) Generally.—**Except as otherwise expressly provided by Act of Congress,** any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Removal based on diversity of citizenship.—(1) In determining whether a civil action is removal on the basis of the jurisdiction under section 1332(a) of this title, the citizenship *of defendants sued under fictitious names shall be disregarded.*

(2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendant is a citizen of the State in which such action is brought.

28 U.S.C. §§ 1441(a), (b) (emphasis added).

The pre–2011 version of § 1441 reads, in relevant part:

(a) **Except as otherwise expressly provided by Act of Congress,** any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. **Any other such action** shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. §§ 1441(a), (b) (emphasis added).

stitution, treaties or laws of the United States"; therefore, § 1141(b) was an express "Act of Congress" pursuant to § 1441(a) that prohibited removal of admiralty claims absent diversity jurisdiction. *Id.* The 2011 version of § 1441(b) removes the phrase "any other such action" and only refers to actions brought pursuant to 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(b) (2011). Therefore, the language the Fifth Circuit determined precluded removal is no longer present and no language on the face of § 1441 precludes removal of actions pursuant to § 1333. Accordingly, the Court finds that § 1441(b)'s plain language allows the removal of the maritime claims at issue here.[38]

### 2. Savings to Suitors Clause

Regardless of whether § 1441(b) now allows removal of admiralty cases originating in state court, Exxon contends removal is barred by the Savings to Suitors clause in 28 U.S.C. § 1333 in order to protect its right to elect a jury trial. Additionally, because admiralty cases are brought "at law" in state court, admiralty cases are exempted from § 1333's grant of original jurisdiction. Defendants assert the Savings to Suitors clause does not bar removal as it only protects the election of a common law remedy and not the right to a non-federal forum. **As all Defendants state they will consent to a jury trial,** they contend the Savings to Suitors clause does not bar removal here.

■■■ The invocation of the Savings to Suitors clause does not take this case outside the original jurisdiction of the federal courts under 28 U.S.C. § 1333. Section

1333 provides that: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Exxon's contention rests on the statement in *Barker v. Hercules Offshore, Inc.* that admiralty jurisdiction is not present in a suit filed in state court because the "saving-to-suitors exception to original admiralty jurisdiction" is invoked. 713 F.3d at 222. This characterization suggests when a case is filed at law in state court the Savings to Suitors clause removes that case from the subject matter jurisdiction of the federal courts. However, the Fifth Circuit previously held that filing a suit at law in state court does not strip the federal courts of original admiralty jurisdiction if the case is subsequently removed and a party waives objecting that removal was improper pursuant to the Savings to Suitors clause. *Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1543 (1991).

*Baris* is instructive. In *Baris,* a claim under the Death on the High Seas Act ("DOHSA") was filed in state court pursuant to the Savings to Suitors clause and then subsequently removed by the defendants pursuant to 28 U.S.C. § 1333. The plaintiffs did not object to removal at that time and the district court subsequently dismissed the case. The plaintiffs then moved for a new trial and remand, asserting the district court lacked subject matter jurisdiction because the case was improperly removed under the Savings to Suitors clause. *Id.* The Fifth Circuit rejected the plaintiffs' argument that the district court lacked subject matter jurisdiction and held there is a difference between removal ju-

---

**38.** The courts declining to follow *Ryan,* in addition to an analysis of § 1441, cite to the Savings to Suitors clause and the preservation of the traditional right to elect a jury trial in admiralty by filing in state court. *See, e.g., Rutherford,* 59 F.Supp.3d at 813; *Parker,* 2014

WL 7338850 at *4–5. While the Savings to Suitors clause may in some cases preclude removal of general maritime cases that analysis is independent of whether the language of § 1441(b) still precludes removal.

risdiction and "original or subject matter jurisdiction." *Id.* at 1544. As a DOHSA claim originally could have been brought in federal district court, even if it was filed·in state court pursuant to the Savings to Suitors 'clause, the federal district court was not divested of subject matter jurisdiction. *Id.* at 1545. If removal was improper, this was a procedural defect going to removal jurisdiction, which could be waived.[39] *Id.* at 1544–45.

*Baris* makes clear that the mere act of filing a case in state court pursuant to the Savings to Suitors clause does not place the case outside the Court's original admiralty jurisdiction. Subject matter jurisdiction cannot be waived. Therefore, under *Baris*, filing an admiralty case pursuant to the Savings to Suitors clause in state court does not transform the action in such a way as to divest the Court of the original admiralty jurisdiction it would have had if the case was initiated in federal court.[40] The dicta in *Barker* suggesting otherwise does not control when there· is explicit Fifth Circuit precedent to the contrary. *Baris's* holding was followed by *Williams v. AC Spark Plugs Division of General Motors Corp.,* 985 F.2d 783, 787 (5th Cir. 1993) and *Riverside Construction Co., Inc. v. Entergy Mississippi, Inc.,* 626 Fed. Appx. 443 (5th Cir.2015). The Court finds that *Baris* and its progeny is the controlling case line. Accordingly, the Court finds that it is not divested of subject matter jurisdiction over a case when it is filed in state court pursuant to the· Savings to Suitors clause.

◼ Having determined that filing a case at law in state court does not remove the case from the Court's original admiralty jurisdiction, the Court turns to whether removal here was otherwise proper; specifically, the effect of the Savings to Suitors clause in this case.[41] The Savings to Suitors clause only guarantees a common law remedy, not a common law forum.[42] Thus, as here, where the Defendants all consent to a jury trial in federal court[43]— preserving the common law ·remedy—the

---

**39.** The plaintiffs had failed to file a motion for remand within thirty days as required by 28 U.S.C. § 1447(c). *Id.* at 1543. A procedural defect is one that "does not go to the question of whether the case originally could have been brought in federal district court." *Id.* at 1544. Procedural defects in removal can be waived. *Id.* at 1544–45.

**40.** Defendants also contend that the Savings to Suitors clause is not applicable to Exxon, because Starr, not Exxon, was the original suitor as the first party to file a suit in this litigation. *National Union's and ICSOP's Supplemental Briefing Regarding the Court's. Original Jurisdiction of this Case,* Document No. 30 at pg. 6. Because Defendants raise this argument for the first time in court-ordered supplemental briefing, and this argument is outside the scope of the Court's ordered briefing, the Court deems it untimely raised and waived.

**41.** Exxon also contends the Savings to Suitors clause is an "Act of Congress" that bars removal under 1441(a). *Plaintiff Exxon Mobil*

*Corporation's Memorandum of Law in Support of Motion to Remand,* Document No. 7 at 10. However, if the Savings to Suitors clause were an act that barred removal, it would preclude removal even pursuant to an independent grant of jurisdiction such as diversity jurisdiction. *See* Wright & Miller, Federal Practice & Procedure § 3674. Therefore, the Savings to Suitors clause cannot be construed as an "Act of Congress" that bars removal here.

**42.** *See Tennessee Gas Pipeline v. Houston Casualty Ins. Co.,* 87 F.3d 150, 153 (5th Cir. 1996).

**43.** *Starr Indemnity & Liability Company's Surreply to Reply of Exxon Mobil in Support of Motion to Remand,* Document No. 22 at 2; *National Union's and ICSOP's Sur–Reply in Opposition to Exxon Mobil Corporation's Motion to Remand,* Document No. 24 at 3.·

Savings to Suitors clause does not appear on its face to demand remand of the instant case.[44] However, the Court's inquiry does not end there. Exxon also contends the Court should remand the case pursuant to the principles of federalism articulated in *Romero v. International Terminal Operating Co.*

*Romero* held that a claim under general maritime law was not a "question of law" such that it would be subject to federal question jurisdiction under 28 U.S.C. § 1331. 358 U.S. at 359–60, 79 S.Ct. 468. In reaching that holding, the Supreme Court discussed the federalism implications if it were to hold otherwise. *Id.* at 371–74, 79 S.Ct. 468. The Court stated if it held such actions could be brought pursuant to § 1331 then savings clause actions would be freely removable. *Id.* at 371–72, 79 S.Ct. 468. This would eliminate not only the suitor's traditional choice of forum but would disturb the deeply rooted principle of concurrent jurisdiction between state and federal courts for maritime actions. *Id.* at 372, 79 S.Ct. 468.

The concerns articulated in *Romero* are not present here. Admiralty cases can only be removed if all defendants consent to the remedies sought to be preserved pursuant to the Savings to Suitors clause. Unlike *Romero,* where merging the admiralty claims into federal question jurisdiction would have made "considerable inroads into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters," *id.* here, consent to the common law remedy limits the scope of actions that can be removed. Construing admiralty claims as included in federal question jurisdiction

would have eviscerated the Savings to Suitors clause because 28 U.S.C. § 1331, and not § 1333, which contains the Savings to Suitors clause, would have been the basis for removal. Here, concurrent jurisdiction is preserved in allowing removal of admiralty claims pursuant to § 1333, because the claims can only be removed if there is consent to the remedy preserved by the Savings to Suitors clause. Accordingly, concerns for the preservation of federalism do not require the Court to decline to exercise its original admiralty jurisdiction.

The Savings to Suitors clause may bar removal to federal court where the parties seeking removal do not consent to the remedy preserved by filing the action in state court. But here, Exxon only has a right to its common law remedy of a jury trial, not to have that jury trial take place in state court. *See Tennessee Gas Pipeline,* 87 F.3d at 153. All Defendants have consented to a jury trial. Federal Rule of Civil Procedure 39 provides a mechanism by which cases not brought at law may be tried by jury with the consent of all parties. FED. R. CIV. P. 39(c)(2). Therefore, there is a mechanism by which this Court may enforce the common law remedy sought. Accordingly, the Court finds because it has original admiralty jurisdiction and § 1441(b)'s plain language no longer bars removal, the Savings to Suitors clause in § 1333 does not require remand where all defendants have consented to a jury trial.

### D. Res Judicata and Claims Arising Under Workers' Compensation Law

Exxon contends the claims against IC-SOP in the Third Amended Petition arise

---

44. In Exxon's briefing in support of remand the only common law remedy it states it seeks to preserve under the Savings to Suitors clause is the right to a jury trial. *Exxon Mobil Corporation's Joint Reply to Response of Starr Indemnity & Liability Company, Nation-* *al Union Fire Insurance Company of Pittsburgh PA, and the Insurance Company of the State of Pennsylvania's Responses to Exxon Mobil Corporation's Motion to Remand,* Document No. 21, ¶¶ 19–20.

under workers' compensation laws, as does the conspiracy claim against National Union, and therefore, the Instant Suit cannot be removed. Defendants contend the Robert's Suit final judgment resolves all claims against ICSOP and that res judicata bars the assertion of those claims here.[45] Additionally, Defendants contend any additional claims asserted against ICSOP and National Union in the Third Amended Petition are either barred by res judicata under Texas's transactional approach or not cognizable under Texas law.

■■■■■ Jurisdictional facts are established at the time of removal and post-removal events do not affect removal jurisdiction. *Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 636 (5th Cir.2014). Pursuant to 28 U.S.C. § 1445(c), civil actions arising under a state's workers' compensations laws may not be removed from state court. 28 U.S.C. § 1445(c). Claims that a workers' compensation insurer contractually waived its rights under the Texas Labor Code arise under state workers' compensation law and are not removable. *Trahan*, 571 Fed.Appx. at 320–21. Texas's transactional approach to res judicata bars all suits arising out of the same subject matter of a prior suit that could have been litigated in the prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). The transactional approach bars suit not only on matters actually litigated, but "also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the

first suit." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex.1992). "[I]f a plaintiff prevails in a lawsuit, his cause of action merges into the [judgment] and the cause of action dissolves." *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex. 1985). "[A] trial court's judgment is final for purposes of res judicata ... even when the case is on appeal." *Gonzales v. Guilbot*, 315 S.W.3d 533, 536 n. 3 (Tex.2010).

■■■■ Judge Atlas remanded the Instant Suit—after initially denying a motion to remand—because following *Trahan*, the claims asserted against ICSOP now were classified as claims arising under Texas workers' compensation law. The claim arising under workers' compensation law against ICSOP in the Third Amended Petition, which is the controlling pleading for removal purposes, is for breach of contract for failing to acknowledge subrogation rights. The Third Amended Petition also asserts for the first time a conspiracy claim against National Union and ICSOP pertaining to interference with Exxon's subrogation rights.[46]

Exxon sought declaratory relief that ICSOP waived its subrogation rights in both the Instant Suit and the Roberts suit. Exxon moved for summary judgment against ICSOP in both actions. On April 2, 2015, prior to removal, interlocutory summary judgment was granted in the Instant Suit and then in the Roberts Suit on April 15, 2015. On May 11, 2015, a final judgment was issued in the Robert's

---

**45.** ICSOP pleaded res judicata as an affirmative defense to the Third Amended Petition. *National Union's and ICSOP's Sur–Reply in Opposition to Exxon Mobil Corporation's Motion to Remand*, Document No. 24, Exhibit A at 23 (*Defendant the Insurance Company of the State of Pennsylvania's Answer to Plaintiffs Third Amended Petition*). The record does not reflect the state district court had ruled at the time of removal on the continuing viability of the claims against ICSOP in the Instant Suit

that were the subject of the Roberts Suit final judgment.

**46.** National Union and ICSOP dispute whether Exxon has adequately pleaded a conspiracy claim. *See National Union's and ICSOP's Brief in Support of their Response to Exxon Mobil Corporation's Motion to Remand*, Document No. 17 at 14.

Suit, which included a grant of declaratory relief for Exxon as to their subrogation rights claim against ICSOP. The cause of action for breach of contract, as well as the declaratory relief sought as to the waiver of subrogation rights, in both suits are identical.

Exxon made a decision to seek nearly identical declaratory relief against ICSOP in both the Instant Suit and the Roberts Suit. Interlocutory summary judgment for Exxon was granted in both. However, upon the Roberts Suit final judgment issuance any claims against ICSOP in the Instant Suit, which were not yet subject to a final judgment, were merged into the Roberts Suit final judgment and dissolved. Any additional claims that Exxon asserts against ICSOP in the Third Amended Petition pertaining to the waiver of subrogation are barred by Texas's transactional approach because the claims could have been brought in the Roberts Suit. Therefore, res judicata attaches to the final judgment in the Roberts Suit and serves as a bar to the claims asserted against ICSOP here.

The sole basis for remand of the Instant Suit after its initial removal was the presence of the claims against ICSOP, which arose under workers' compensation law and barred removal. Those claims are no longer a bar to removal. The fact that the Roberts Suit final judgment is currently on appeal does not alter that analysis. A trial court's decision is considered final for res judicata purposes even if on appeal.

Nor does the presence of any conspiracy claim asserted in the Third Amended Petition against National Union and ICSOP require remand here.[47] Texas law does not recognize a claim for conspiracy to breach a contract. *Grizzle v. Texas Commerce Bank, N.A.*, 38 S.W.3d 265, 285 (Tex. App.—Dallas 2001, pet. granted) *rev'd in part on other grounds by Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240 (Tex. 2002). Exxon's participatory liability theory, which is the basis for its assertion that any claims against National Union arise under workers' compensation law,[48] is de-

---

**47.** Exxon also asserts that the conspiracy claims, insurance code violations, and bad faith claims against ICSOP and National Union were expressly not before the Roberts Suit court, and therefore, res judicata does not attach to those claims. *Exxon Mobil Corporation's Joint Reply to Response of Starr Indemnity & Liability Company, National Union Fire Insurance Company of Pittsburgh PA, and the Insurance Company of the State of Pennsylvania's Responses to Exxon Mobil Corporation's Motion to Remand*, Document No. 21, ¶¶ 27–28. Res judicata does not "preclude litigation of claims that a trial court explicitly separates or severs from that action." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985). In support, Exxon cites to *Heard v. Moore*, 101 S.W.3d 726, 728 (Tex.App—Texarkana 2003, pet. denied). Unlike *Heard*, which addressed the res judicata effect between a non-adverse plaintiff and third-party defendant, here res judicata would apply because Exxon and ICSOP were an adverse defendant and third-party defendant.

The extra-contractual claims against ICSOP in the Instant Suit were not severed from the Roberts Suit. Even if the state court judge in the Instant Suit denied ICSOP's motion to consolidate the extra-contractual claims with the Roberts Suit, it was still Exxon's choice to assert identical claims, to seek identical relief in two separate suits, and to move for summary judgment on that claim in both suits. In doing so, Exxon took the risk that the suit in which it did not assert the extra-contractual claims would reach a final judgment first and have a preclusive effect in the suit with the extra-contractual claims. The effect of the claims against asserted National Union is addressed below.

**48.** *Exxon Mobil Corporation's Joint Reply to Response of Starr Indemnity & Liability Company, National Union Fire Insurance Company of Pittsburgh PA, and the Insurance Company of the State of Pennsylvania's Responses to Exxon Mobil Corporation's Motion to Remand*, Document No. 21, ¶¶ 23, 23 n.7.

pendent on the non-cognizable conspiracy claim. Hence, the claims against National Union do not arise under workers' compensation law to bar removal here. Accordingly, the Court finds that removal was proper because any claims related to workers' compensation law that would have barred removal were merged into the Roberts Suit final judgment and dissolved from the Instant Suit.

*E. Timeliness of Removal*

Exxon asserts removal was not timely because it was not within thirty days of the interlocutory summary judgment in the Instant Suit. Defendants contend the Instant Suit was not removable until the final judgment in the Roberts Suit extinguished all the claims against ICSOP. Exxon also contends that, even if removal were otherwise timely, a court decision in a separate case does not make the Instant Suit removable pursuant to 28 U.S.C. § 1446(b). Defendants contend under Fifth Circuit precedent, a decision in a separate state case involving the same defendants and claims allows removal pursuant to 28 U.S.C. § 1446(b).

*1. Qualifying "Orders" under 28 U.S.C. § 1446(b)*

Pursuant to 28 U.S.C. § 1446(b), if a case is not initially removable, notice of removal must be filed within thirty days of a "motion, order or other paper from which it may first be ascertained that the case is or has become removable." 28 U.S.C. § 1446(b)(3). Decisions in an unrelated case generally do not qualify as "orders" or "other papers." *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 266–67 (5th Cir.2001). A decision in an unrelated case qualifies as an "order" only if it "[involves] the same defendants, and a similar factual situation and legal issue." *Id.* at 268. The order

need not explicitly discuss removal if it has the effect of making the case removable. *See id.* (holding an order in different case, involving the same defendants deciding the defendants could not legally be sued under that provision of law, made the case at bar in *Green* removable).

Whether a final judgment in a separate case that triggers res judicata—involving the same defendant, same plaintiff, and same set of facts as the instant case—is an "order" under § 1446(b) is a matter of first impression in this Circuit. Although *Green* involved a matter of legal interpretation that made the case removable, as opposed to the issuance of a judgment that triggered res judicata in the Instant Suit, the effect of the order in the separate suit is the same. In *Green*, a decision in a separate suit found that the claims against the same defendants whose joinder precluded removal in the *Green* suit were not cognizable under Texas law. *Id.* at 265–66. This made the *Green* suit removable because the non-removable defendants were in effect dissolved from the suit. *Id.* at 265–66, 268. Here, it was only the presence of the claims arising under workers' compensation law against ICSOP that precluded removal of the Instant Suit. Upon issuance of the Roberts Suit final judgment, res judicata attached and all of Exxon's claims against ICSOP related to this transaction were merged into that judgment and dissolved from the Instant Suit. Thus, the effect of the Roberts Suit final judgment is the same as the separate decision in *Green*—dissolving the non-removable defendant—and brings the Instant Suit within the scope of *Green's* narrow holding. Accordingly, pursuant to *Green*, the Court finds the Roberts Suit final judgment was an "order" within the meaning of 28 U.S.C. § 1446(b)(3) making the Instant Suit removable.

### 2. Date for Calculating Removal Period

Having determined the Roberts Suit final judgment is an "order" allowing removal, the Court turns to whether the Roberts Suit final judgment is in fact the date from which the thirty-day removal period under 28 U.S.C. § 1446(b) began to run. Removal must occur within thirty days of a non-removable case becoming removable. 28 U.S.C. § 1446(b)(3). A judgment is only final if it disposes of all "all parties and all claims." *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex.2007) (discussing that a summary judgment would be interlocutory unless it also addressed fees claims). Res judicata requires a final judgment to attach. *Amstadt v. US. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). An interlocutory summary judgment does not support a plea of res judicata. *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex.1991).

On April 2, 2015, interlocutory summary judgment was granted in the Instant Suit as to the declaratory judgment relief sought against ICSOP. The interlocutory judgment did not dispose of the claim against ICSOP for attorney's fees, which was predicated on the claims arising under workers compensation law. Not only was the Instant Suit interlocutory judgment not final for res judicata purposes, but it also did not dispose of all the claims against ICSOP that barred removal. Thus, it was not an order from which the Defendants could have ascertained removability.

Similarly, the April 15, 2015 Roberts Suit interlocutory summary judgment only granted declaratory relief and did not address attorneys' fees. It was only upon issuance of the May 11, 2015 Roberts Suit final judgment as to the declaratory relief against ICSOP that res judicata could attach. At that time all claims against IC-SOP arising from that transaction were merged into the Roberts Suit final judgment and dissolved from the Instant Suit. Therefore, Defendants could not have ascertained removability until May 11, 2015. Starr filed its notice of removal on June 4, 2011. This was within thirty days of the May 11, 2015 Roberts Suit final judgment. Accordingly, the Court finds that removal was timely.

### IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Exxon Mobil Corporation's Motion to Remand (Document No. 6) is **DENIED.**